Carla McKinney OCHS, Appellant,

v.

The STATE of Texas, Appellee.

James Connor OCHS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 52491 and 52492.

Court of Criminal Appeals of Texas.

Sept. 20, 1976.

Certiorari Denied Jan. 17, 1977.
See 97 S.Ct. 786.

**356**

Frank S. Wright, Ronald L. Goranson (on appeal only), Dallas, for appellant.

Gene Knize, County Atty., Waxahachie, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeals are taken from convictions for possession of more than four ounces of marihuana. Appellants were tried jointly before the court upon pleas of not guilty. Punishment was assessed at three years in each case.

Appellants contend that the court erred "in admitting into evidence State's Exhibits 1A, 1B, 1C, 2, 3 and 12 (the marijuana), all of which had been seized as the result of an unlawful search."

Narcotics officer Green of the Department of Public Safety received a call in Dallas about 10:45 a. m. on October 17, 1974, from a confidential informant who had "three or four times" previously given him information "concerning narcotics investigations and information involving people in narcotic traffic" that "turned out to be correct." The informant advised Green that a white male named Michael was fixing to pick up a large amount of marihuana in a green Ford pickup from a yellow house near Bristol in Ellis County. Green and officer Demick drove to Bristol, where Green again met with the informant, and "he [informant] ran this story down to me again." As a result of the conversation, Green and Demick began surveillance of a yellow frame house on "rural or farm land" near Bristol. Shortly after the officers arrived, Green observed Carla Ochs [appellant] "leave the residence holding a large amount of marihuana stalks which appeared to me to be marihuana stalks." Green stated that he was able to form an opinion that the stalks were marihuana from three years of experience in observing same. A white male was next observed leaving the residence with three brown paper sacks which were placed in the cab of a green and white Ford pickup. The officers approached the pickup, where "we could clearly see that it was a green plant substance in the brown paper sacks which ap-

peared to us to be marihuana . . . ." The man, later identified as one Michael Hanson, entered the house and, before the officers could knock on the door of the house, Hanson opened the door and the officers observed "another shopping bag in the living room of the residence which contained what appeared to me to be marihuana." The bag in the house, along with the bags in the pickup, were seized and the contents of same were determined to be marihuana. In addition, a small quantity of marihuana was found near the front steps of the house and a patch of marihuana plants was discovered in the yard.

■ While the search is warrantless, the standards applicable to determining whether the facts of a case support an officer's probable cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied when receiving the decision of a magistrate. *Whiteley v. Warden, Wyoming Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Truitt v. State,* Tex.Cr.App., 505 S.W.2d 594. Appellants concede that the second prong of the test set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, that the reliability of the informer be shown by sufficient underlying circumstances, has been met.

Appellants urge that the requirement of *Aguilar* that there must be some underlying circumstances shown from which the informant concluded that the contraband was where he claimed it was has not been met.

The State responds by urging that the facts upon which the search and seizure are based are similar to those in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. As in *Draper,* sufficient details were furnished to enable the officers to verify much of the information related by the informer. The information supplied by the informer was ample in detail to allow adequate corroboration of its trustworthiness and enable the officers to conclude that the informer spoke with personal knowledge or had gained his information in a reliable way. See *Almendarez v. State,* Tex.Cr.App., 460 S.W.2d 921; *Buitron v. State,* Tex.Cr.App., 519 S.W.2d 467.

Appellants urge that the *Draper* line of cases is not applicable in that the officers in the instant case obtained the information which corroborated the informer as the result of an intrusion upon appellants' land. Appellants argue that appellants' home was in a wooded area and that the action of the officers in coming upon their property was an invasion of the appellants' reasonable expectation of privacy.

In *United States v. Holmes,* 521 F.2d 859 (5th Cir., 1975), cited by appellants, reversal resulted where a government agent entered upon defendant's rural property and peered into a hole in a shed for the purpose of securing evidence which would support issuance of a search warrant. The agent's action was not found to fall within the "open fields" exception. Appellants point to the following language in *Holmes:*

> "Whatever precautions a homeowner in an urban area might have to take to protect his activity from the senses of a casual passerby, a dweller in a rural area whose property is surrounded by extremely dense growth need not anticipate that government agents will be crawling through the underbrush . . . ."

The "open fields" doctrine is discussed by the United States Supreme Court in *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). In *Hester,* government agents concealed themselves "from fifty to one hundred yards" from defendant's house, where they observed defendant take a jug out of a car. Upon discovery of the officers, the defendant dropped the jug and ran. Examination of the jug by the officers revealed that it contained "moonshine whiskey." The Court held that even though the officers were on the defendant's land when they made the observations which led to the seizure of evidence, the evidence was not obtained by an illegal search or seizure, the court stating:

> ". . . the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects' is not extended to the open fields.

The distinction between the latter and the house is as old as the common law. 4 Bl.Comm. 223, 225, 226."

Appellants reason that while the "open fields" doctrine may be applicable "if the search occurred in the West Texas plains," but by virtue of the growth surrounding appellants' home they had a reasonable expectation of privacy, an invasion of which is only warranted if based upon probable cause.

It is undisputed that the officers were on appellants' property when they made the observations which led to the seizure and arrests, Green testifying, "we were approximately fifty yards from the house when we noticed her [appellant Carla Ochs] walking toward us with the pile of what appeared to me to be marihuana stalks."

We need not decide whether the farmer whose home is on the plains of West Texas is subject to the "open fields" rule while his counterpart can remain in his house amidst the pine trees of East Texas immune from the surveillance of officers stationed in his fields.

Appellants' Exhibit 2, identified as a photograph of the appellants' property, in included in the record. Insofar as we are able to discern from viewing the exhibit, which appears to be an aerial photograph, there is a heavily wooded area on only one side of the house. Green testified in response to appellants' questions that you have "trouble in some places seeing very far off."

■ Even if the language in *Holmes* were binding on this Court and served to furnish the individual "surrounded by extremely dense growth" with a protective shield from the open fields doctrine, we cannot conclude that the evidence reflects that the home of appellants was situated in such an area.

In *Atwell v. United States,* 414 F.2d 136 (5th Cir., 1969), the defendant urged that evidence relative to a still found on his property 250 yards from the back of his house was not admissible as such evidence was obtained as the result of an unreasonable search and seizure. In rejecting such defense, the court stated:

"But inasmuch as the protection of the Fourth Amendment against unreasonable searches and seizures does not extend to 'open fields,' there was no unreasonable search. See, e. g., *Hester v. United States,* 1924, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; *Monnette v. United States,* 5th Cir. 1962, 299 F.2d 847. Moreover, even if the officers were trespassing on private property, a trespass does not of itself constitute an illegal search. *Monnette v. United States,* supra; *United States v. Young,* 4th Cir. 1963, 322 F.2d 443."

■ The facts surrounding the observations made approximately fifty yards from the appellants' house are in sharp contrast to the peering into a shed on the defendant's premises in *Holmes* and the intrusion by government agents by electronic devices in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. We reject appellants' argument that the officers had made an intrusion in violation of appellants' Fourth Amendment rights at the point where they made the observations heretofore detailed. We conclude that the observations of the officers, coupled with the information from the reliable informer, furnished probable cause to conduct the search and seizure in question. *Draper v. United States,* supra; *Almendarez v. State,* supra; *Buitron v. State,* supra.

■ Appellants further urge, "Even if there was probable cause to search the property, the prosecution failed to show sufficient exigent circumstances to waive the requirement of a warrant." The information furnished by the informer did not ripen into probable cause until such information was corroborated by the observations of the officers. At this point in time, bags of what appeared to the officers to be marihuana were being placed in a pickup. It would have been impracticable to secure a search warrant since the pickup could be quickly moved out of the jurisdiction in which the warrant must be sought. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280,

69 L.Ed. 543; *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; *Coyne v. State,* Tex.Cr.App., 485 S.W.2d 917.

■ Clearly, the officers had a right to enter the house and continue the search when they observed marihuana inside the house upon Hanson opening the door. *Albro v. State,* Tex.Cr.App., 502 S.W.2d 715.

See and cf. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Santana,* —— U.S. ——, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). We reject appellants' contention that the court erred in admitting the contraband into evidence.

Appellant James Ochs contends the evidence is insufficient to support the conviction finding him guilty of possession of marihuana.

Hanson, an accomplice witness as a matter of law, was called as a witness by the State and testified that he had gone to Dallas to see James Ochs relative to obtaining a job working in his art and antique shop. On the night prior to the day in question, Hanson went with James and Carla Ochs to their farm in Ellis County. Prior to leaving Dallas, James and Carla Ochs told Hanson that he could have some marihuana to carry back to Austin with him. Hanson and both of the Ochses smoked marihuana after they arrived at the farm. Hanson stated that James Ochs told him that ". . . he had marihuana there and he was growing it."

Appellant James Ochs points to the fact that Hanson was an accomplice witness and testimony showing that at the time when the officers entered the house on the day in question he [James Ochs] was in the bathtub and that there is no testimony from the officers relative to his handling or having any of the contraband in his possession. Appellant further calls our attention to testimony of Hanson that he was told that James and Carla Ochs were separated and that James was under a restraining order not to go on the property in question.

In *Williams v. State,* Tex.Cr.App., 524 S.W.2d 705, it was stated:

"Possession of narcotics need not be exclusive and evidence which shows that the accused jointly possessed the narcotic with another is sufficient. *Curtis v. State,* Tex.Cr.App., 519 S.W.2d 883; *Simpson v. State,* Tex.Cr.App., 486 S.W.2d 807; *Valdez v. State,* Tex.Cr.App., 481 S.W.2d 904; *Shortnacy v. State,* Tex. Cr.App., 474 S.W.2d 713; *Ochoa v. State,* Tex.Cr.App., 444 S.W.2d 763. Mere presence at a place where narcotics or dangerous drugs are possessed does not in itself justify a finding of joint possession. *Curtis v. State,* supra; *Valdez v. State,* supra. The evidence must affirmatively link the accused to the contraband in such a manner that a reasonable inference arises that the accused knew of its existence and whereabouts. *Curtis v. State,* supra; *Hineline v. State,* Tex.Cr.App., 502 S.W.2d 703; *Williams v. State,* Tex. Cr.App., 498 S.W.2d 340."

When we eliminate the testimony of the accomplice witness Hanson, we find the following evidence of an incriminating nature tending to connect James Ochs with the possession of the contraband. See *Cherb v. State,* Tex.Cr.App., 472 S.W.2d 273; *Bentley v. State,* Tex.Cr.App., 520 S.W.2d 390.

■ The testimony of officer Green reflects that a bag of marihuana was found in the Ochses' house, marihuana was growing near the front steps of the house, and a "patch" containing marihuana plants was found in the yard. Carla Ochs was observed carrying marihuana stalks from the house and Hanson was observed carrying three bags of marihuana from the house and placing same into his pickup. The foregoing non-accomplice testimony clearly tends to connect appellant James Ochs with the offense and we conclude that such testimony, coupled with the testimony of the accomplice witness, was sufficient to sustain the conviction. See *Williams v. State,* supra.

The judgments are affirmed.

Opinion approved by the Court.