Eugene Motley OLIVER, Appellant,

v.

The STATE of Texas, Appellee.

No. 49868.

Court of Criminal Appeals of Texas.

Feb. 16, 1977.

Rehearing Denied June 8, 1977.

that the killing took place at the office of the Memorex Corporation where the accomplice Overton had recently worked. The State's evidence also showed that appellant was president of Lectron Industries and the owner of ninety percent of its stock; Barnes had previously been an executive and stockholder of Lectron and was still covered by a Lectron "key man" life insurance policy at the time of his death.

According to the State's evidence, Barnes had been threatening and harassing the appellant. The evidence also showed that Lectron and its president, the appellant, were both in deep financial difficulty and that the appellant thought that he might be able to relieve this difficulty with the proceeds from the "key man" insurance policy. It was the State's theory that the combination of these factors motivated appellant to search for someone to kill Barnes, a search which, according to the State's evidence, led eventually to Jackson.[1]

Appellant complains in three grounds of error that the trial court erred in admitting hearsay in evidence. This hearsay was in the form of a pleading in a civil action, the judgment of the court in that action, and a check payable to Lectron and appellant's attorneys, which was a product of that judgment. We agree with appellant's contentions and reverse.

The principal business of Lectron was developing and marketing an electronic device related to the game of golf. Originally, the deceased, Barnes, had owned forty-five percent of Lectron's stock and had been vice-president of the company. During his tenure as officer and stockholder of the company, Barnes was covered by a $100,000 "key man" life insurance policy; in addition, the policy contained a $100,000 accidental death provision. This policy was properly admitted in evidence to show appellant's motive, *Jones v. State*, 156 Tex. Cr.R. 475, 243 S.W.2d 848 (1951),[2] and appel-

Fred M. Bruner, Dallas, Frank Maloney and Philip A. Nelson, Jr., on appeal, Austin, for appellant.

Henry Wade, Dist. Atty., John Hagler, Russell J. Ormesher and Jim Burnham, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is a companion case to *Jackson v. State*, 516 S.W.2d 167 (Tex.Cr.App.1974). In a single indictment Jackson was charged with the murder of Billie C. Barnes and the appellant was charged with advising and encouraging Jackson in the commission of the offense. Art. 70, Vernon's Ann.P.C. (1925).

Jackson was tried first and convicted; his conviction was affirmed by this Court. *Jackson v. State*, supra. Before the determination of Jackson's appeal a jury found appellant guilty as charged and assessed his punishment at fifty years' imprisonment.

The State's case tended to show that the appellant hired Jackson to kill Barnes, and

---

1. For a detailed summary of the remaining facts, see *Jackson v. State*, supra, 516 S.W.2d at 169–170.

2. And see generally Anno., 28 A.L.R.2d 857 (1953).

lant does not complain on appeal of its admission.

■ However, the State also offered, and the court admitted, three other documents for the ostensible purpose of proving appellant's motive. These were:

(1) The answer of Lectron Industries as third party defendant in case number 71–10951–G, an interpleader action filed in the 134th District Court of Dallas County by the Connecticut Mutual Life Insurance Company. This terse answer claims that Lectron is entitled to all $200,000 of the proceeds of the "key man" insurance policy on Barnes. The answer, State's Exhibit 12, is signed by Jerry Lastelick on behalf of Daugherty, Bruner, Lastelick & Anderson, "Attorneys for Third Party Defendant, Lectron Industries, Inc."

(2) The judgment in case number 71–10951–G, which recites that Connecticut Mutual paid $203,002.24 into the registry of the court, this being the proceeds (plus interest) from the Barnes policy. The judgment also recites that Connecticut Mutual has been only a disinterested stakeholder in the lawsuit, that Connecticut Mutual has fulfilled all its obligations under the policy, and that it is dismissed from the suit. The judgment then recites how the proceeds of the policy are to be divided: approximately half to the named children of Barnes and their attorneys and the remainder ($100,000) to Lectron "and their attorneys Bruner and Lastelick." The signatures of appellant and Jerry Lastelick, among others, are affixed to the judgment. The judgment is numbered State's Exhibit 13.

(3) State's Exhibit 14, which is a certified copy of a check for $100,500, made payable to Lectron Industries, Inc. and Bruner and Lastelick, and signed by Bill Shaw, District Clerk of Dallas County.

The admission of these exhibits was error, since each was admitted to show the truth of the statements contained in the exhibit and each was incapable of being cross-examined. See 1 McCormick & Ray, Texas Law of Evidence, Secs. 781–782, pp. 559–561 (2d Ed. 1956). Accordingly, this Court has consistently held that the pleadings and judgments from other cases are inadmissible as hearsay. *Acker v. State,* 421 S.W.2d 398 (Tex.Cr.App.1967); *Yates v. State,* 489 S.W.2d 620 (Tex.Cr.App.1973); *Brooks v. State,* 475 S.W.2d 268 (Tex.Cr. App.1972); *Busby v. State,* 51 Tex.Cr.R. 289, 103 S.W. 638 (1907) (case 3, on motion for rehearing); *Pannell v. State,* 477 S.W.2d 586 (Tex.Cr.App.1972).

Nor can we conclude that the error was harmless. The exhibits have a strong tendency to show that Lectron settled for less of the life insurance proceeds that it was entitled to, and less than it originally claimed in its third party pleading; from this the jury was likely to infer that the exhibits, taken together, amounted to an implied confession of culpability on the part of the appellant, who the jury knew was Lectron's president and the owner of ninety percent of its stock. The exhibits also tend to leave with the jury the impression that, as a result of the civil suit, "blood money" was placed in the hands of appellant's defense counsel Bruner; this struck at appellant over his counsel's shoulders. Compare *Crutcher v. State,* 481 S.W.2d 113 (Tex.Cr.App.1972); *Cook v. State,* 537 S.W.2d 258 (Tex.Cr.App. 1976).

This case is similar to *Pannell v. State,* 477 S.W.2d 586 (Tex.Cr.App.1972), where the defendant was charged with unlawfully possessing unstamped cigarettes for the purpose of transportation and distribution. In that case the State was allowed to introduce a sheriff's bill of sale arising out of a civil action against Pannell, one Joe Bowman, 567 cases of cigarettes, and a truck and semi-trailer. The bill of sale reflected that the State had recovered judgment in the civil suit, and that the truck and semi-trailer matched the truck and semi-trailer in which the unstamped cigarettes were found. Over the State's argument that this evidence was necessary to prove that the vehicles were registered to Bowman, this Court reversed, holding that "the introduction of the contents of the sheriff's bill of sale arising out of another law suit and reflecting the findings of the court was

inadmissible as hearsay and clearly prejudicial." *Id.*, at 589. See also *Busby v. State*, supra.

The State argues that the exhibits were admissible under the provisions of Art. 3731a, V.A.C.S. However, Section 1 of that statute imposes a threshold requirement of relevance, which these exhibits clearly do not meet.

The State also contends that the jury already knew of the litigation over the insurance proceeds as a result of a letter attached to the insurance policy which was properly admitted into evidence. We cannot agree, since this letter only referred to the litigation and did not disclose any of the prejudicial facts contained in Exhibits 12, 13, and 14.

Finally, in its supplemental brief the State argues that the error was cured by the court's instruction to the jury which advised the jury that Exhibits 12, 13, and 14 were admitted solely for the purpose of aiding the jury in "determining the disposition of the proceeds." Again, we cannot agree. This charge did not cure the error; instead, it emphasized the prejudicial aspects of the exhibits and may well have added to the harm.

■ We conclude that the introduction of the prejudicial hearsay calls for reversal. *Pannell v. State*, supra; *Busby v. State*, supra. However, because of the possibility of another trial, we will also discuss two of appellant's other contentions.

Appellant's first contention is that the trial court erred in failing to instruct the jury that the State's witness Enright was an accomplice as a matter of law. According to Enright, he introduced the appellant and Jackson after appellant asked him for help in finding someone to kill Barnes. Enright stated that he consented to do so only to gain time to persuade the appellant not to go through with the crime.

■ In *Jackson v. State*, supra, this precise ground of error was raised and rejected. To the extent that the evidence in this case is, in its material aspects, like that in the earlier case, we are bound by our previ-

ous holding, absent a showing that that holding is clearly wrong and harmful; this is the "law of the case" doctrine. *Warren v. State*, 523 S.W.2d 237 (Tex.Cr.App.1975); *Porter v. State*, 154 Tex.Cr.R. 540, 229 S.W.2d 68 (1950).

We have carefully compared the record in this case with the record in *Jackson* and find only one factual difference between the two cases insofar as Enright's role in the crime is concerned. In *Jackson*, Enright testified that the first affidavits he gave to the police after the offense were incomplete because he was on probation and was afraid that he might be implicated in the crime. At the trial of *this* case Enright gave an additional reason for his incomplete statements: "I was trying to protect my friends, Mr. Oliver and Mr. Jackson."

■ The issue is whether this additional testimony, combined with the other evidence connecting Enright with the offense, was sufficient to make Enright an accomplice as a matter of law. Appellant urges that the testimony tends to show that Enright was an accessory. See Art. 77, V.A. P.C. Of course, under our former Code, an accessory who testified was an accomplice witness. *Hernandez v. State*, 169 Tex.Cr.R. 418, 334 S.W.2d 299 (1960); *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.1973); *Easter v. State*, 536 S.W.2d 223 (Tex.Cr. App.1976).

■ For one to be an accessory (under our former Code) a felony must have been committed, and the alleged accessory must know that the defendant is guilty; moreover, the accessory must to some degree shelter the defendant from pursuit. *Jones v. State*, 137 Tex.Cr.R. 146, 128 S.W.2d 803 (1939); *Clark v. State*, 159 Tex.Cr.R. 187, 261 S.W.2d 339 (1953), cert. den. 346 U.S. 855, 74 S.Ct. 69, 98 L.Ed. 369 (1953); *Easter v. State*, supra.

■ In this case, Enright repeatedly stated that, at the time he made the affidavits, he did not—could not—believe that Oliver was capable of committing the offense. In addition, there is some evidence in the record that these affidavits were *helpful* to the

State in its slow and sometimes uncertain development of the case against appellant.

Clearly, then, Enright's statement that he intended to "protect" appellant did not of itself make Enright an accessory as a matter of law; instead, it merely raised a fact question for the jury. See *Gonzales v. State,* 441 S.W.2d 539 (Tex.Cr.App.1969); *Alva v. State,* 166 Tex.Cr.R. 450, 314 S.W.2d 843 (1958).

The case of *Alva v. State,* supra, is especially in point. In *Alva,* a murder case, the two witnesses alleged to be accessories were present when the murder occurred; they knew the defendant and knew that he fired the fatal shot. Shortly after the shooting, however, they denied knowing who killed the deceased. Later they admitted what they knew. On the stand both admitted a desire to see the defendant escape detection. In affirming, this Court held that the witnesses were not accomplices as a matter of law. In that case, as in the one before us, the court submitted the accomplice issue as a fact question. This was held to be sufficient in *Alva,* and accordingly we hold that the "protection" testimony in this case, when added to the other evidence presented here (and in *Jackson*) was not such as to require an instruction that Enright was an accomplice as a matter of law.[3] *Alva v. State,* supra; *Gonzales v. State,* supra; see also *Dillard v. State,* 479 S.W.2d 304 (Tex. Cr.App.1972); *Franks v. State,* 130 Tex. Cr.R. 577, 95 S.W.2d 128 (1936); *Tipton v. State,* 126 Tex.Cr.R. 439, 72 S.W.2d 290 (1934); *Clark v. State,* supra; *Findley v. State,* 378 S.W.2d 850 (Tex.Cr.App.1964).

■ Thus, since the trial court submitted to the jury the fact issue of whether Enright was an accomplice, we are bound by the law of the case doctrine and hence by the holding in *Jackson v. State,* supra. *Warren v. State,* supra; *Porter v. State,* supra.

Appellant's first contention is overruled.

Appellant also contends that the court erred in failing to charge on circumstantial evidence. Appellant's timely objection to this failure was overruled.

■ The difference between direct evidence and circumstantial evidence is that direct evidence applies directly to the ultimate fact to be proved, while circumstantial evidence is the direct proof of a minor fact which, by logical inference, demonstrates the fact to be proved. *Ramos v. State,* 478 S.W.2d 102 (Tex.Cr.App.1972).

■ The main fact to be proved in this case, as both the State and appellant agree, is whether appellant willfully advised and encouraged Jackson to kill Barnes, as alleged in the indictment. The appellant contends that the evidence of this fact is purely circumstantial; the State by implication agrees when it states, first, that the testimony "amounts to" direct evidence and, second, that even if it does not, the facts are in such "close juxtaposition" that no circumstantial evidence charge was required.

We have carefully searched the record with special attention to the testimony emphasized by the State. Although not without probative force, the evidence was purely circumstantial. A circumstantial evidence charge should have been given.

We need not discuss appellant's remaining contentions; however, we trust that in the event of another trial the prosecutor will refrain from sidebar attacks on opposing counsel.

The case of *McGoodwin v. State,* 134 Tex. Cr.R. 231, 115 S.W.2d 634 (1938), is also distinguishable. There this Court specifically found that the statement of the witness shortly after the offense was clearly "made for the purpose of aiding . . . the appellant to evade arrest or trial." *McGoodwin,* supra, at 233, 115 S.W.2d, at 635. No such finding could be made in the case now before us. See *Jones v. State,* supra; *Clark v. State,* supra.

---

3. Although it bears a superficial resemblance to this case, the case of *Wade v. State,* 367 S.W.2d 337 (Tex.Cr.App.1963), is distinguishable. In *Wade,* the record makes it obvious, as does the opinion, that the witness knew the appellant was guilty. The witness was also effective in helping the appellant to avoid apprehension, "even though such aid was effective for only a short period of time." *Wade,* supra, 367 S.W.2d, at 338–339.

The judgment is reversed and the cause remanded.

DOUGLAS and ODOM, JJ., concur in the result.