Horace Barry JORDAN, Appellant.

v.

The STATE of Texas, Appellee.

No. 46583.

Court of Criminal Appeals of Texas, Panel No. 2.

Dec. 20, 1978.

Rehearing En Banc Denied Feb. 28, 1979.

Robert N. Udashen, Huntsville, for appellant.

Henry M. Wade, Dist. Atty., Fred C. McDaniel and James K. Johnson, Asst. Dist. Attys., Dallas, for the State.

Before ONION, P. J., and DALLY and VOLLERS, JJ.

## OPINION

VOLLERS, Judge.

This case arises from an out-of-time appeal granted as a result of post conviction habeas corpus. Appellant challenges the introduction of evidence at his trial which was obtained in a search of his apartment.

Appellant was convicted of the offense of robbery and assessed punishment of 50 years' imprisonment. The conviction was affirmed on appeal. See *Jordan v. State*, 500 S.W.2d 638 (Tex.Cr.App.1973). Application for post conviction habeas corpus relief was denied by this Court. On motion for rehearing we reviewed the appellate record and determined that appellant filed a *pro se* brief in his original appeal which directly raised the issue of validity of the search. A limited out-of-time appeal was granted to consider this question.

This is a companion case to *Lowery v. State*, 499 S.W.2d 160 (Tex.Cr.App.1973) which involved the same search complained of by appellant. The first question to be decided is whether this Court is bound by its previous holding on the search issue in *Lowery*, supra. In *Oliver v. State*, 551 S.W.2d 346 (Tex.Cr.App.1977) and *Warren v. State*, 523 S.W.2d 237 (Tex.Cr.App.1975) we held that the prior decisions of this Court are binding under the "law of the case" doctrine where the evidence, in its material aspects, is the same as in the earlier case, absent a showing that such holding is clearly wrong and harmful.

On October 28, 1970, the Dallas Police Department secured a warrant for the arrest of Lowery based on an affidavit supported by a hearsay tip from an unidentified informant. On October 29, 1970, approximately twenty policemen went to his apartment to execute the warrant. Several officers entered the apartment and arrested Lowery. This Court reversed the *Lowery* case, and held that since the arrest warrant was illegal because the supporting affidavit failed to meet the requirements of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. U. S.*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969),

the search was not incident to a valid arrest. Furthermore, the Court found that the arrest would not have been justified without a warrant. The Court further found that a 17 year old girl at the apartment, Joyce Strawn, did not give voluntary consent to the search of the apartment.

At the time Lowery was arrested, the appellant in this case was living in the same apartment. Dallas police had been informed that a party using the name of Thomas Elliot was living at Lowery's apartment and was driving a stolen Cadillac automobile. While the police were inside the apartment, they observed appellant drive up in a Cadillac matching the description of the stolen automobile, step out of the car, take à pistol from his belt, and place the pistol under the front seat of the Cadillac. He was arrested upon entering the apartment, and his person as well as the Cadillac were searched.

Appellant was subsequently tried and convicted of the offense of robbery which occurred at a grocery store. Evidence was introduced at the trial which was obtained in the search of Lowery's apartment. Appellant complains of the introduction of such evidence at his trial.

The evidence in the instant case as to the admissibility of the evidence seized from the apartment is identical in its material aspects to that of the *Lowery* case, supra. The evidence as to the validity of the arrest warrant is the same in this case as in the *Lowery* case. On the issue of consent by Joyce Strawn to search the apartment, she did not testify at appellant's pretrial hearing to suppress, but her testimony from the *Lowery* trial was introduced at appellant's trial by written stipulation. No additional evidence was introduced by the State indicating that our finding of involuntariness of the consent in *Lowery* was mistaken.

As to the contention by appellant that we are bound by the "law of the case" doctrine because of our previous holding on the search issue in *Lowery*, supra, it appears that *Oliver*, supra, and *Warren*, supra, may have been an unwarranted extension of the "law of the case" doctrine. In 5 Tex.Jur.2d,

Section 463 (1959) the doctrine is defined as follows:

"The appellate court's ruling on a question of law raised on a former appeal will be considered as the law of the case in all subsequent proceedings in the same case unless the ruling was plainly wrong and harmful."

Numerous cases are cited which have adopted this language, and all of these involved a second appeal by the same defendant in the same case. For example, in *Gragg v. State*, 152 Tex.Cr.R. 386, 214 S.W.2d 292 (1948), the defendant's case was on its second appeal. There the Court quoted the language from Texas Jurisprudence cited above, and then stated:

"Were the rule otherwise, trial courts would in a great measure be at sea, and would feel inclined and be authorized to give but little weight to the decisions of the (appellate) court. However, if it appeared that the decision was wrong, and a substantial injury has been done a citizen of this state by such decision, it would be our duty and pleasure to remedy that wrong."

■ Both the *Oliver* and *Warren* cases deal with appeals by companion defendants which involve the same material facts. They do not involve former appeals by the same party in the same case. While both decisions cite *Porter v. State*, 154 Tex.Cr.R. 540, 229 S.W.2d 68 (1950) as authority, *Porter* involved an appeal where the defendant had been previously tried for killing a different man during the same transaction. See *Porter v. State*, 152 Tex.Cr.R. 540, 215 S.W.2d 889 (1948). The Court then applied the law of the case doctrine because the facts were the same in all material aspects and both cases grew out of the same transaction. Therefore, a strict application of the "law of the case" doctrine does not appear to be warranted unless it is a subsequent proceeding in the same case, involving the same parties.

■ However, in the instant case the facts pertaining to the issuance of a search warrant, the validity of the arrest, the consent to search, and whether or not the search was incident to a valid arrest are the same in this case as they were in the *Lowery* case in regard to the evidence seized from the apartment where both Lowery and this appellant lived. Although we are not bound by the "law of the case" doctrine in this case, we reach the same conclusion on each of these issues that was reached in *Lowery*, supra. Though not binding upon us, the conclusion reached in *Lowery* is certainly persuasive. We again find that the warrant of arrest was invalid, there was no valid arrest without a warrant, there was no search incident to a valid arrest, and there was no voluntary consent to search the apartment given by Joyce Strawn. See *Lowery v. State*, supra. Under these circumstances the search of the apartment was improper, and the evidence was illegally seized therefrom. Accordingly, we hold that the introduction at appellant's trial of evidence obtained from the search of the apartment occupied by Lowery and appellant was improper.

■ Appellant further contends that his arrest and the search incident thereto were improper as fruits of the unauthorized search of his apartment. Appellant complains that the State elicited testimony from the arresting officer concerning a credit card found in appellant's person, as well as a .45 pistol and five rifles found in the Cadillac, which were obtained as a result of such unauthorized activity by the police.

The officers had received information from a reliable informant that a person driving a stolen late model Cadillac would be at a certain apartment in Dallas. While at that location, the officers observed appellant driving an automobile matching the description of the stolen automobile. In addition, the officers observed appellant place a pistol under the front seat of the Cadillac. These observations corroborated information received from the informant, and provided probable cause for the officers to believe an offense was being committed in their presence. See Article 14.01, V.A.C. C.P.; *Buitron v. State*, 519 S.W.2d 467 (Tex. Cr.App.1975).

However, appellant asserts that his arrest was the result of the "continuous" operation of the officers in their search of the apartment. We disagree. The observations made by the officers which led to the arrest of appellant could have been made had the officers been positioned on the street rather than in the apartment. This is not a case in which law enforcement officers have exploited a vantage point which was obtained only as a result of an illegal search; it is clear that appellant had no expectation of privacy when he removed a pistol from his belt and placed it under the car seat on a public street. Cf. *Ochs v. State*, 543 S.W.2d 355 (Tex.Cr.App.1976), *cert. denied* 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977); *Atwell v. U. S.*, 414 F.2d 136 (5th Cir. 1969); *Hester v. U. S.*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

The issue upon which this case turns is whether the improper admission at trial of evidence obtained from the apartment search is reversible. The State contends that the error was harmless in view of other evidence introduced at trial. The only *physical* evidence introduced at trial obtained in the apartment search was a photograph of the appellant which showed him with bleached hair. This corroborated the testimony of State's witnesses who identified the robber as having had bleached hair. However, the arresting officer testified that appellant had bleached hair on the date he was arrested, October 29, 1970, two weeks after the robbery. Additionally, defense counsel invited introduction of the evidence. Defense counsel showed the arresting officer the photograph on cross-examination which had been marked as a defense exhibit. The record reveals the following colloquy:

### CROSS EXAMINATION

(Defense): All right. Unless you want to offer it, I don't.

### REDIRECT EXAMINATION

(State): Did you find that in the apartment out there?

(Officer): I found it in the apartment out there on Sherwood Forest.

(State): Judge, we'll offer that, offer this into evidence as State's Exhibit No.___

(Defense): It's marked D–13.

(State): We'll offer it as D–13.

The Court: Do you have any objection; its admitted into evidence.

The only other evidence from the apartment admitted at trial was the general testimony of Officer Rose that the officers "[f]ound numerous rifles, shotguns, machine gun, quite a bit of radio equipment." This evidence did not in any way relate to the issue of guilt.

There was substantial evidence of guilt introduced by the State. Two robbery victims made in-court identifications of appellant, and stated that he robbed them at around 8:30 p. m., Sunday, October 14, 1970. They further testified that the appellant at that time had bleached hair and wore a blue jump suit. A third witness testified that she sold appellant a blue jump suit around 7:00 p. m., October 14, 1970, and that he made the purchase with a credit card bearing the name Charles Hull. She also said that the appellant had bleached hair at the time of the purchase. Finally, Officer Rose testified that when arrested appellant possessed a credit card bearing the name Charles Hull.

The defendant introduced alibi testimony from his mother and stepfather that he was at his mother's home in Louisiana the day of the robbery. A friend of appellant testified that she kept a pet for appellant one weekend in October, although she was not sure which weekend it was.

The test for harmless-constitutional error is not whether a conviction could have been had without the improperly admitted evidence, but "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We feel, beyond a reasonable

doubt, that this evidence did not contribute to the *conviction* of the appellant for the offense of robbery.

Although we conclude that the evidence which was erroneously admitted did not contribute to the determination of appellant's guilt in this case, we must also decide whether or not it was harmless in regard to punishment. Appellant stipulated at trial that he lived at the apartment that was searched. During closing arguments on the issue of punishment the prosecutor told the jury:

> "When you think about what his proper punishment should be, think about the vicious injurious habits that he has, carrying a pistol, his apartment there that he stipulated into evidence contained a bomb or bombs, a machine gun, countless rifles; vicious habits."

Evidence was also introduced at the punishment stage that appellant had a previous felony conviction for burglary. The evidence as to appellant's guilt proved that he committed an armed robbery, but there was no brutality proved other than the exhibition of a firearm in the commission of the offense.

Under this record the 50 year sentence assessed by the jury in this cause is not unusual, but that is not the question presented here. The question is whether or not we can say that this evidence was harmless beyond a reasonable doubt. Under the facts in this case, we cannot conclude that the prosecutor's request to the jury to consider this inadmissible evidence in determining punishment did not contribute to the punishment assessed. Therefore, we are unable to say that this error was harmless beyond a reasonable doubt on the issue of punishment.

Since the punishment was assessed by the jury in this cause, and this case cannot be reversed solely upon the issue of punishment, the judgment of conviction is reversed, and a new trial is ordered.

DALLY, J., concurs in result.