**James TUCKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–81–0040–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 10, 1981.

Discretionary Review Denied March 24, 1982.

Michael P. Haines, Houston, for appellant.

Paul Finley, Gonzales, for appellee.

Before EVANS, C. J., and DOYLE and STILLEY, JJ.

EVANS, Chief Justice.

After a non-jury trial, the appellant was convicted of possession of marihuana and sentenced to four years confinement. In a single ground of error he contends that the trial court erred in overruling his motion to suppress evidence obtained during a search of his residence.

The first witness for the State, a Constable for Colorado County, testified that on the day in question he had worked until noon in another business in which he was engaged. At about 4:00 p. m. he met Calvin H. Boehme, a local rancher, at a beer parlor in New Ulm, and the two men decided to go look for one of Boehme's cows which was running at large. Boehme had spotted some of his stray cattle about four weeks earlier and had recaptured all except one. The constable and Boehme drove south from New Ulm to Boehme's ranch, and then proceeded down a country road and then on a gravel road to a dead-end where "a little dirt road took off to the

left." They had travelled the dirt road for about fifty yards when they came upon a house and car, which Boehme identified as belonging to the appellant. They drove up within three car lengths of the house, at which point the constable observed what appeared to be marihuana stalks hanging on the front porch. The constable and Boehme then returned to New Ulm, where the constable obtained a search warrant from the Justice of the Peace. The constable, the Justice of the Peace, two county deputies, a Texas Ranger, and a game warden then returned to the appellant's house to serve the search warrant. On the front porch of the appellant's house the constable found the marihuana stalks drying upside down, and upon entering the house found marihuana and other paraphernalia, which he seized. He did not know whether the dirt road leading to the appellant's residence was an oil field road or a county road, but to the best of his knowledge, one would leave a county or state road "when you turn into" the appellant's residence. The road is unfenced on either side. There were no posted signs on any of the roads leading to the appellant's residence, and there was nothing to indicate whether the roads were private or public. The area is heavily brushed, and one can see perhaps twenty-five yards into the brush. The road leading to the appellant's house is a crooked road, having two or three turns in it, and at the point the dirt road turns off the gravel road, one is unable to see the appellant's house. The constable testified that he was some sixty or seventy yards from the house when he first observed it, and that he was some three car lengths away, approximately twenty yards, before he saw any marihuana. During cross examination, the constable was asked:

Q. So, is it safe to say that before you saw any marihuana, you saw a man's home and his cars, and you realized that there was somebody's residence; is that not true?

A. Yes, it broke off into an opening.

The defense called one witness, Alvin Boehme, the rancher who had driven the constable to the appellant's house. He testified that in order to reach the appellant's house, one must drive down Weisson Road, then on a gravel oil field road to a point where the appellant's dirt road turns off, and then proceed three or four hundred feet to the appellant's house. He said that the constable told him that he saw marihuana hanging on the porch and wanted to get a search warrant "just about" when they first saw the house. Boehme did not have permission from the appellant to go on his property.

■ An officer may seize contraband when he sees it in plain sight or open view if he is lawfully where he has a right to be. *Kolb v. State*, 532 S.W.2d 87, 90 (Tex.Cr. App.1976).

It is unclear from the testimony in the record whether the road leading to the appellant's residence was public or private in character. It is clear from the evidence that the road was not fenced or posted and that land on either side of the road was brushy, open rangeland.

■ The trial court was at liberty to conclude from the evidence that the constable and rancher were proceeding along a road open to the public when they happened upon the appellant's house. The court was also entitled to conclude from the testimony that the marihuana stalks were plainly visible from the road, and that there was nothing which shielded such contraband from the casual observation of persons approaching the house by automobile.

In *Ochs v. State*, 543 S.W.2d 355 (Tex.Cr. App.1976) cert. den'd 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977) two narcotic officers, acting upon the information of an informant, commenced surveillance of the defendant's house in a rural area. Shortly after the officers arrived, they observed the defendant, about fifty yards away, leave the house carrying stalks of marihuana. The Court of Criminal Appeals held that the observations of the officers, coupled with the information from a reliable informant, furnished probable cause to conduct the search and seizure. The court left open the question of whether an individual's

home "surrounded by extremely dense growth" is protected from surveillance under the language of *United States v. Holmes*, 521 F.2d 859 (5th Cir. 1975).

In *Holmes*, a government agent had entered upon the defendant's rural property and peered into a shed for the purpose of securing evidence to obtain issuance of a search warrant. Holding that the agent's conduct did not fall within the "open fields" exception, the U.S. Supreme Court stated:

"Whatever precautions a homeowner in an urban area might have to take to protect his activity from the senses of a casual passerby, a dweller in a rural area whose property is surrounded by extremely dense growth need not anticipate that government agents will be crawling through the underbrush..."

There is a marked difference, however, between the facts in *Holmes* and the circumstances in the case before this court. In *Holmes* the officer could not see the contraband without looking into the interior of a structure on the defendant's land. In the case at bar, as in *Martin v. U. S.*, 155 F.2d 503 (5th Cir. 1946), in *Hester v. U. S.*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), and in *Ochs, supra*, the contraband was in plain view and did not require an intrusion into the house. Neither did the constable in the case at bar go upon the appellant's property for the specific purpose of looking for marihuana, as in *Gedko v. Heer*, 406 F.Supp. 609 (W.D.Wisc.1975).

There is evidence in the record from which the trial court, sitting as the trier of fact, could have determined that the constable was where he had a right to be when he first viewed the marihuana stalks hanging from the front porch of the appellant's house. The appellant's ground of error is overruled.

The judgment of the trial court is affirmed.