**Harry D. STANLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 59188.**

Court of Criminal Appeals of Texas, Panel No. 1.

Oct. 29, 1980.

Howard O. Lake, Houston, for appellant.

Carol S. Vance, Dist. Atty., Calvin A. Hartmann and Ed Dodd, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and DALLY, JJ.

OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of aggravated robbery. The punishment is imprisonment for ninety–nine years.

The appellant contends that it was error to admit in evidence items seized at the time of his arrest thirteen days after the commission of the offense for which he was being tried. The appellant who filed a motion for probation also argues the admission of this inadmissible evidence was harmful because it increased the punishment assessed by the jury.

A cashier for a convenience store testified that the appellant entered the store at approximately 3:55 a. m. on April 3, 1977. He asked for cigarette papers. The cashier turned around and reached the cigarette papers and as she turned back she saw a second man enter the store carrying a shotgun. The man with the shotgun told the cashier to empty the contents of the cash register into a sack. During this time the appellant did not move. Finally, the man with the shotgun said, "Let's go" and the pair left the store with appellant going first. The cashier stated that the gun was a long single barrel shotgun.

The State then offered the testimony of two police officers who arrested the appellant on April 16, 1977. They stated that they were flagged down by a man who told them he had seen three men in an automobile and one of them had a rifle. The officers, after receiving the description of the three men found them sitting in an automobile on a parking lot near a grocery store. The officers approached the automobile and noticed various weapons inside the automobile. The three men, one of whom was the appellant, were ordered out of the automobile and were arrested. A loaded pistol was found near where the appellant had been sitting. The other passenger was carrying another loaded pistol. A third loaded pistol was found between the door and the seat on the driver's side of the automobile. A search of the interior of the automobile uncovered a loaded Luger, a mini–14 semi–automatic carbine, a loaded bolt action twelve–gauge shotgun, a loaded M–1 carbine, a bandelero containing twelve–gauge shotgun shells, a Bowie knife and a bayonet. Two briefcases were found inside the trunk of the automobile. Inside the briefcases were a pistol clip, gloves, a police scanner, and FM wireless micro-phone, a flashlight, tape, shotgun shells, precision screwdrivers, seven hundred dollars in cash, and pills. The officers brought all of these items, except the M–1 carbine, the money, and the pills, into the court and exhibited and identified them. The three pistols, the bolt–action shotgun, the Bowie knife, the bayonet, the police scanner, and the wireless microphone were admitted into evidence.

Each officer testified that he did not know how any of the items related to the present offense and that he was unaware at the time appellant was arrested that the present offense had been committed thirteen days earlier in another part of Houston.

The cashier of the store testified that the long barrel bolt–action shotgun admitted in evidence looked like the gun which had been pointed at her during the robbery. However, she admitted any number of shotguns would have looked like it. It was not error to admit in evidence this shotgun. *Mullenix v. State,* 499 S.W.2d 330 (Tex.Cr.App.1973); *Jackson v. State,* 486 S.W.2d 764 (Tex.Cr.App.1972).

The appellant's counsel offered no evidence and rested when the State did. The jury was instructed that the State had introduced in evidence transactions other than the one charged in the indictment and that this evidence was admitted for the limited purpose of showing appellant's intent and identity.

It is appellant's contention that the items admitted, found when the appellant was arrested, were unrelated to the offense for which he was being tried and had a prejudicial effect upon the jury. When evidence that is prejudicial and harmful and which has little or no relevance to any issue in the case is admitted it generally requires reversal of the judgment. *Hernandez v. State,* 484 S.W.2d 754 (Tex.Cr.App.1972); *Jones v. State,* 481 S.W.2d 900 (Tex.Cr.App. 1972).

The three pistols, the knife, the bayonet, the scanner, and the microphone had no relevance to any issue in the present

case. Nothing was presented to show that these items related to the robbery for which appellant was being tried. These items were improperly admitted in evidence. *Cunningham v. State*, 500 S.W.2d 820 (Tex. Cr.App.1973); *Schuenemann v. State*, 500 S.W.2d 319 (Tex.Cr.App.1973); *Hernandez v. State*, supra. See *Reynolds v. State*, 505 S.W.2d 265 (Tex.Cr.App.1974).

However, even though the admission of this evidence was error it must be determined whether there is a reasonable possibility that this evidence might have contributed to the conviction and the punishment imposed upon the appellant. *Cunningham v. State*, supra.

The prosecutor during his closing argument during the guilt–innocence stage of the trial stated:

"... I don't have to spell it out, I don't believe, to show you what everybody was doing with the various pistols. The driver had it down by his side. He had evidently dropped it when he saw the police coming. The other man had it stuck in the back of his belt like that, with the coat covering it. When the policeman patted him down, he feels it. This man had his pistol lying on the side right on the seat, as if he had just placed it there. When they searched the rest of the vehicle, they find the rest of the weapons. You have seen them all. You have seen every weapon. Some of them have a capacity of thirty shots. You could take any one of those weapons and kill everybody in this courtroom with it in fifteen seconds. Now, what do you think their intent was? What do you think his intent was? That is the purpose of that evidence.

\* \* \* \* \* \*

"... What do you think is the purpose, the intent of a police scanner? Do you have a police scanner? Do I have a police scanner? Do we carry one around with us so we can put it on the radio channel, if we were in the southeast or the northwest, wherever we are that particular night, so we can listen in and know what the police know? What is the little scanner telling him? That tells him what the

police know. The police are coming after them and they know how to change.

\* \* \* \* \* \*

"As long as you refrain from finding him guilty, he remains a free man to do as he pleases, as he did on April 13th with his armada of guns."

During the punishment stage of the trial the prosecutor in his closing argument stated:

"The next thing you know, he is out there with his buddies, sitting in the back of a car with a collection of guns, the likes of which I have never seen. You have got three pistols. Each one of the men had a pistol, and each one of them is loaded. Each one of them has a shell in the chamber and each one of them is loaded to the hilt. You have an M–1 carbine that has thirty rounds in it. You saw that type of clip; it just goes right up–bamm, bamm, bamm, bamm, bamm. You had two shotguns, this one fully loaded, and you had the other carbine which you saw, thirty rounds in it.

\* \* \* \* \* \*

"... He is a professional. He knows what he is doing. You see the outlay of material that they have–a police scanner. Have you ever seen an armed robber so calculating, when you package this material? It is all neat in a briefcase, and he has a police scanner. You turn it on and it picks up the different channels. He possibly has one in his car right now, whatever section of the city he is in. (Turning police radio on momentarily.)

"What risks did the police officers take when they went up to that car? One went up with his gun drawn. The other one, who had had a little more experience, walked up to the driver's side of the car without his gun drawn and risked his life to arrest these men. They could have killed him thirty times, one hundred times with what they had."

■ It appears from the preceding jury argument by the prosecutor as well as from the evidence presented at trial that the appellant was prosecuted in part not for the

offense with which he was charged but rather for an offense he and two other men, while heavily armed and well equipped, might have committed if they had not been prevented from doing so by their timely arrest. A large portion of the testimony presented by the State during the guilt–innocence stage of the trial dealt with events surrounding the appellant's arrest. All the exhibits presented by the State, with the exception of a photograph of the appellant, were items seized when the appellant was arrested. The properly admitted evidence of guilt of the offense with which appellant was charged was not so overwhelming that the error caused by the admission of the other evidence was harmless.

The charge submitted to the jury purporting to limit the jury's use of this evidence to questions of identity and intent did not mitigate the error in its admission. The appellant rested with the State and offered no evidence; identity and intent were not controverted issues.

While we note that the appellant fled after his guilt was determined and was not present during the punishment stage of the trial and his absence may have had an effect upon the jury's determination of punishment, it cannot be reasonably assumed that the improperly admitted evidence did not weigh heavily in the jury's determination of guilt and even in their assessment of punishment of imprisonment for ninety–nine years. Therefore, we conclude that the evidence complained of may have contributed to the conviction and the assessment of punishment. *Schuenemann v. State*, supra.

The judgment is reversed and the cause remanded.