Michael David HOUSTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 743–82.

Court of Criminal Appeals of Texas,
En Banc.

May 4, 1983.

Randal B. Gilbert, Tyler, for appellant.

---

Hunter B. Brush, Dist. Atty. and Charles F. Montgomery, Jr., Asst. Dist. Atty., Tyler, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

The Court granted discretionary review to consider the manner in which the Tyler Court of Appeals treated and resolved appellant's claim that the trial court erred by allowing the prosecution to impeach its own witness. *Houston v. State* (Tex.App.—Tyler 1982).

The State tried this case and the trial court charged the jury on the theory that appellant, acting together with Richard Wickware as a party, killed the deceased *"while in the course of committing theft* and with intent to appropriate property, to-wit: *lawful United States Currency"* from the deceased.[1] Evidence that Wickware actually shot and killed the deceased is, as the court of appeals found, "overwhelming."

The most hotly contested issue in trial was whether the homicide occurred during the course of committing theft. When investigating officers surveyed the scene, inspected the interior of the automobile of the deceased and examined contents of his pockets, that a robbery had been committed was surely plausible. To prove that critical element the prosecution undertook to demonstrate that currency had in fact been stolen from the deceased.[2] Having previously taken a statement from him to that effect, the prosecutor secured the presence of Michael Williams and called him for that obvious purpose, among others.

After he had recounted how from a window of the hotel room he watched Wickware and appellant approach the automobile of the deceased, but then turned away from the window and "a few minutes later" heard a shot, Williams testified—still on direct examination:

"Q: Now, when they came back Houston had a wallet in his hand?

A: No, he didn't.

Q: Did he offer to give you some money?

A: I don't know if it was—I don't know if it was either Richard or Michael. One of them tried to offer me some money.

Q: You don't remember who after they got back tried to offer you some money?

A: No, I don't." [3]

The group promptly left the hotel and went to Motel 6 to rent a room. Nearby was a cattle trailer with license plates from another State. Williams further testified:

"Q: And did you see someone throw a wallet on that trailer?

A: I didn't see anyone throw a wallet on that trailer.

Q: What did you see regarding that?

A: Well, me and Fay was walking ahead of Michael and Richard. I don't know if it was Richard, but I think it was Richard that put the billfold in the cattle trailer.

Q: All right. Was Houston with Richard when that happened? They were back together?

A: They were lagging back together, but I think—I'm quite sure Richard put it there, you know."

Crossexamination by appellant covered much the same ground, *viz:*

1. All emphasis is added by the writer of this opinion unless otherwise indicated.

2. We agree with the court of appeals that established authority holds a completed theft is not required to constitute the offense of robbery, *Houston v. State,* supra, at ——. However, the error claimed by appellant must be examined and assayed in its contextual setting of issues raised during trial.

3. One will note that to the extent this testimony was "injurious to his cause," Article 38.28, V.A.C.C.P., the prosecutor made no "outcry" whatsoever. Nor, as a separate matter, did he claim "surprise" then or ever.

"Q: ... Did you see Michael with any kind of wallet or billfold when he came back to the room?

A: No, I didn't.

Q: At sometime during that evening did Richard Wickware try to offer you some money?

A: Yes, he did.... He tried to offer me some money out at Motel 6.

Q: You didn't see a billfold or anything, he just said what? 'Do you need some money?' or what?

A: Yes.

\* \* \* \* \* \*

A: We walked back across to Motel 6.

Q: Is it at this time that Wickware stuck the... billfold in the—

A: Into that goose-neck trailer, yes."

When the State took Williams back on redirect, the prosecutor broached the subject of the prior statement taken from Williams by the State, had Williams confirm that he had signed a second statement for the defense "yesterday afternoon" and then asked, "There's a little bit of difference in the statements; isn't there." Appellant's counsel objected: "He's trying to impeach his own witness that he just called. This is not proper and we very strongly object to it...." There was then an "off the record discussion" at the bench, followed by a request by counsel for "a bill on this, on all the questions he asks [in that]... [w]e would object to any attempt of the State to impeach their own witness." The trial judge responded to counsel, "You may have a bill," and to the prosecutor, "You may ask the questions."

The questions and answers bearing on the ground of error under consideration are:

"Q: What I want to ask you is: in the penitentiary didn't you tell Eddie Clark and me that Michael Houston came up with a wallet in his hand?

A: The reason why I said that—

Q: Well, Mr. Williams, I'm not asking you why. I'm just asking whether or not you did sign a statement saying that Michael Houston brought a wallet up into room 302. Did you sign a statement to that effect?

A: I *might* have did.

Q: Do you recall me asking you about that this morning; whether or not Mr. Houston brought a wallet up to the room after you heard a gunshot? Do you remember me asking you that question?

A: No, I don't.[4]

Q: And then you signed a statement for Mr. Gilbert [defense counsel] saying that Houston didn't bring the wallet; isn't that correct?

A: Right.

Q: What I want to ask you now is; *are you telling me* that you don't know who brought up the wallet, or *are you telling us* that it was one or the other?

A: I'm *telling* you I don't know who brought it up.

Q: *Are you telling us* that the wallet did come out—as far as you know someone got a wallet out of that automobile?

A: Well, I seen the wallet at Motel 6, is when I saw the wallet."

It was then that the trial judge, seemingly *sua sponte*, admonished jurors: "[I]n connection with that testimony offered at that time, in view of the objections, the testimony offered only for the purpose of impeachment," explaining, "The only evidence is the fact of what the witness had actually testified to and it's offered only for the purpose of impeaching him by prior contradictory statement if he did make a prior contradic-

---

4. Being uncertain whether the prosecutor was referring to a private interview with Williams earlier "this morning" or to the question put to Williams on his own direct examination, we will assume for purposes of this opinion that the reference is to the former; still, it must be observed, Williams' response leaves us in the dark about what answer, if any, he gave to the question during the private interview.

tory statement."[5] Appellant renewed his objection "to this whole line of examination by the State . . . ." Though each statement had been marked as a State's exhibit "for the record . . . bill given by Mike Williams," neither was offered or admitted before the jury—nor is either in the record before this Court.

Article 38.28, V.A.C.C.P., provides:

"A party may, when testimony of his own witness is injurious to his cause, attack the testimony in any other manner except by offering evidence of the witness' bad character."

The court of appeals noted those statutory provisions, and then it found that "Texas courts have added a further requirement that the party seeking to impeach its own witness must show that the party was 'surprised' by the witness' testimony." *Houston v. State*, supra, at ——. Recounting the hearing outside the presence of the jury during which the trial court granted Williams immunity, and paraphrasing much of the same testimony before the jury that we have excerpted *ante*, the court below concluded: When Williams finally testified to facts favorable to the defense and *injurious to the State's case*, we think it is *highly*

*probable* that the State was *surprised.*" *Houston v. State*, supra, at ——.[6]

Simply finding that the court of appeals applied an incorrect legal standard in determining the matter of surprise—"the more recent cases *require* that the party *be* surprised," Ray, Texas Law of Evidence (3rd Edition) § 632, 1 Texas Practice 563[7]—we now address the more serious question of whether any testimony of Williams was "injurious to the State's case." We find it was not.

Again early on, an effort was made by the Court to define the key phrase of the statute as it then existed; paraphrased *viz:* "A party may prove the prior contrary statement of a witness in impeachment of his *testimony* when he testified to a fact injurious to the cause of such party" (Court's emphasis), *Baum v. State*, 60 Tex. Cr.R. 638, 133 S.W. 271, 278 (1910) (On State's Motion for Rehearing). One application of its definition still obtains:

"If the state has offered no evidence to prove a relevant fact, it cannot be said that its witness, who denied the existence of such relevant fact, has by such denial injured the state's case."

"A case of surprise at testimony other than that expected and calculated upon is perhaps shown. But there is a well-defined difference in the rules with reference to surprise and impeachment. 'A party *bona fide* surprised at the unexpected testimony of his witness may be permitted to interrogate the witness as to his previous declarations alleged to have been made by the latter, inconsistent with his testimony, the object being to probe the witness' recollection, and lead him, if mistaken, to review what he has said. Such corrective testimony is also receivable to explain the attitude of the party calling the witness. But when the sole object of the testimony so offered is to discredit the witness, it will not be received.' *White v. State*, 10 Tex.App. 381, quoting 1 Whart. Ev. § 549."

*Bennett v. State*, supra, 5 S.W. at 528.

Patently, somewhere along the way the functional distinction between impeachment and surprise became blurred, for the present rule is as Professor Ray found it to be. But, in view of our disposition of this point, further exploration need not be pursued.

---

**5.** A similar instruction was given the jury in the written charge of the trial court.

**6.** However, as we have pointed out *ante* at note 3, the State never claimed "surprise." In its brief to the court of appeals the State argued that "the record establishes that the witness' testimony, to the effect that he never saw Appellant with the wallet, *was* a complete surprise to the prosecutor [State's emphasis]." However, when the prosecutor took Williams on redirect and revealed his own prior knowledge that "then you signed a statement for [defense counsel] that Houston didn't bring the wallet," we are satisfied that the prosecutor knew his revelation precluded a claim of "surprise," and thus we understand why he never made one.

**7.** See, e.g., *Dove v. State*, 623 S.W.2d 346, 348 (Tex.Cr.App.1981); *Wall v. State*, 417 S.W.2d 59, 61 (Tex.Cr.App.1967).

Professor Ray notes "there was some conflict in the earlier cases," but does not cite them. Maybe he had in mind, e.g., *Bennett v. State*, 24 Tex.App. 73, 5 S.W. 527 (1887), wherein then Presiding Judge White analyzed the situation presented and concluded:

See, e.g., *Houston v. State,* 626 S.W.2d 43, 45–46 (Tex.Cr.App.1981); *Wall v. State,* 417 S.W.2d 59, 61 (Tex.Cr.App.1967).[8]

In its brief before this Court in this cause the State now concedes:

"The testimony of Michael Williams at issue here was not injurious to the State's case against the Appellant... [and] it seems clear that the State's introduction of Williams' prior inconsistent falls outside the ambit of Article 38.28."

We agree.

Williams was the last witness for the State. Before he testified it had been shown that the thirty one year old deceased "usually had some money on him" and that on the day of his death he had drawn twenty five dollars, that the inside of his automobile had been ransacked and that neither a wallet nor driver's license was found in his automobile or on his person. Williams testified that after appellant and Wickware returned from their venture "one of them tried to offer me some money;" a short time later, walking with appellant to Motel 6, Wickware put a wallet in the out of state cattle trailer. Thus, circumstantially allegations of the aggravated robbery set out in the indictment, when coupled with the law of parties, had been supported by proof.

When Williams testified on direct examination that appellant did not have a wallet in his hand when he came back from the automobile of the deceased, the State had not shown that appellant took the wallet of deceased from his person or elsewhere. So, Williams' testimony that *appellant* did not have a wallet in his hand upon returning to the hotel room is not a denial of a relevant fact with respect to which the prosecution had offered evidence to prove. *Houston v. State,* supra, at 46. rather, it was "a mere failure of proof" in that Williams "failed to testify as expected," *Houston v. State,* supra, at 45, quoting from the conclusion reached by the Court in a similar situation in *Lewis v. State,* 593 S.W.2d 704 (Tex.Cr.App.1980). Therefore, the purported *impeachment* of Williams on redirect examination by the State was improper. *Houston v. State,* supra.

However, on much the same rationale for our conclusion that Williams' report that appellant did not have the wallet in his hand was not a denial of a relevant fact proved by the prosecution, we find the error is harmless beyond a reasonable doubt in that there is no reasonable possibility that what occurred in this respect before the jury contributed to the conviction of appellant. *Clemons v. State,* 605 S.W.2d 567, 571 (Tex.Cr.App.1980). The court of appeals found the evidence sufficient to support the jury's verdict of guilt, and, though appellant challenged that finding in his petition for discretionary review, this Court declined to grant review on that ground. Moreover, considering all the facts and circumstances, it is our best judgment that whether appellant ever possessed the wallet of the deceased is not a point that a rational finder of fact would insist is determinative of his guilt under the law of parties.

Similarly, we are able to say that with respect to punishment assessed the error was harmless beyond a reasonable doubt. The matter of the wallet was never mentioned in argument by either side,[9] so we

8. Preceding its statement of an application of the rule still extant, the *Baum* Court opined: "The adjudged cases make it clear that a party may question his witness as to former favorable statements when he has unexpectedly denied the statements, and yet not have the right to impeach him. If the testimony is *merely* negative and is not in effect equal to the *affirmation* of a fact *favorable* to the adverse party, the party introducing him can go no further than ... refresh his memory, and get from him a retraction or modification of his testimony; but when a witness goes over to the enemy and affirms a fact destructive in whole or in part of the cause of the party introducing him, he, being no longer his witness as to such a fact, may be attacked in any way and by all means, except that of proof of reputation." *Id.,* S.W. at 278.

9. Counsel for appellant argued the greater guilt of Wickware and urged the jury not to make appellant a "scapegoat," whereas the State disclaimed any purpose of cleaning up "all the evil of our county," but pleaded that the jury "clean up starting with him [appellant]; with this evil right over here."

are unable to find a reasonable probability that it contributed to the number of years assessed by the jury as punishment. Compare *Clemons v. State,* supra, at 572; *Jordan v. State,* 576 S.W.2d 825, 830 (Tex.Cr. App.1978).

For these reasons the judgment of the Court of Appeals for the Twelfth Judicial District of Texas is affirmed.