**Michael DROUSCHE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3-82-339-CR.**

Court of Appeals of Texas, Austin.

April 27, 1983.

Patrick J. Feeney, Feeney, O'Hanlon & Moore, P.C., Austin, (Retained Counsel), for appellant.

Edward J. Walsh, Dist. Atty., Ken Anderson, Asst. Dist. Atty., Georgetown, for appellee.

Before SHANNON, EARL W. SMITH and BRADY, JJ.

EARL W. SMITH, Justice.

In this appeal from a jury-trial conviction for indecency with a child, appellant argues that four grounds of error support reversal of the trial court's judgment and sentence of ten years' confinement in the Texas Department of Corrections. The questions presented are: (1) whether a juror was properly permitted to remain on the panel once it was disclosed that he knew the victim's father; (2) whether the court erred in refusing to charge on the lesser-included offense of assault by contact; (3) and (4) whether the seizure of photographs of the victim from appellant's house, pursuant to a "mere evidence" search warrant, violated appellant's rights guaranteed under the United States and Texas Constitutions.

We will overrule all four grounds of error and affirm the judgment of conviction.

On August 15, 1981, Austin police officers, acting on information received from *identified* informants, obtained a search and arrest warrant, and arrested appellant for the offense of indecency with a child. This offense, allegedly committed in Travis County, was allegedly perpetrated upon a child, to whom we will refer as S___ A___ G___.

Following news reports of the arrest, another child, E___ M___ C___, informed her parents that approximately two months earlier, during a photographic session conducted by appellant, he had touched her genitals with his hand. This offense, against E___ M___ C___, was alleged to have occurred in a schoolyard in Williamson County and is the gravamen of this appeal.

On August 15, 1981, Austin police officers obtained a warrant to arrest appellant for the Travis County offense, and to search the premises occupied and controlled by appellant. Pursuant to Tex.Code Cr.P.Ann.

arts. 18.01(d) and 18.02(10) (1977 and Supp. 1982), the warrant authorized the officers to seize the following items listed in the supporting affidavit:

(1) Photographs and Photographic Negatives of S____ A____ G____, a female child, depicting the said child in poses which reveal her genital area clothed in underwear.

(2) Photographs and Photographic Negatives of female children depicting the said children in poses revealing their genital areas clothed in underwear.

(3) Photographs and Photographic Negatives of female children depicting the said children in nude or partially nude states.

(4) Cameras and Photographic Equipment.

(5) Exposed, Unprocessed Photographic Film.

Two verified affidavits were presented to the judge in support of the issuance of this warrant. One affidavit, signed by S____ A____ G____, detailed a photo session during which appellant touched the twelve-year-old affiant "between [her] legs." The second affidavit, signed by an Austin police officer, alleged that the officer had viewed photographs taken by appellant of nude and partially nude children while the photos were in the possession of a commercial photo processor. Based upon these sworn statements, the aforementioned warrant was issued and numerous photographs were seized by the police.

Appellant's third and fourth grounds of error allege that the warrant was unconstitutionally overbroad and that no probable cause existed which would justify the seizure of these photographs. This was an art. 18.02(10) "mere evidence" search warrant. ■ Texas Code Cr.P.Ann. art. 18.01 (1977 and Supp.1982) provides, in part:

(b) No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance. A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested. The affidavit is public information if executed.

(c) A search warrant may not be issued pursuant to Subdivision (10) of Article 18.02 of this code unless the sworn affidavit required by Subsection (b) of this article sets forth sufficient facts to establish probable cause: (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched . . . .

(d) Only the specifically described property or items set forth in a search warrant issued under Subdivision (10) of Article 18.02 of this code . . . may be seized. Subsequent search warrants may not be issued pursuant to Subdivision (10) of Article 18.02 of this code to search the same person, place, or thing subjected to a prior search under Subdivision (10) of Article 18.02 of this code.

Article 18.02(10) provides:

[a] search warrant may be issued to search for and seize:

*　　*　　*　　*　　*　　*

(10) property or items, except the personal writings of the accused, constituting evidence of an offense or *constituting evidence tending to show that a particular person committed an offense* . . . . [emphasis supplied]

Accordingly, viewed together, these provisions require that the affiant establish probable cause: that specifically described property be evidence of a specific offense, or be evidence tending to show that a particular person committed a specific offense. The evidence seized in this case was specifically described in the affidavit accompanying the warrant and incorporated by reference therein. The question appellant poses is whether the evidence seized tends to show that appellant committed the offense

of indecency with a child against S\_\_\_ A\_\_\_ G\_\_\_.

■ Appellant argues that the photographs of children other than S\_\_\_ A\_\_\_ G\_\_\_, including photographs of E\_\_\_ M\_\_\_ C\_\_\_, which the police seized in the search, are not evidence tending to show that appellant committed any acts of indecency with S\_\_\_ A\_\_\_ G\_\_\_. He contends that the photographs of other female children posed in revealing, and sometimes suggestive, positions would not be admissible in his trial for the offense against S\_\_\_ A\_\_\_ G\_\_\_. We disagree with appellant's argument that the photographs of E\_\_\_ M\_\_\_ C\_\_\_, seized by the officers, did not constitute evidence tending to show that appellant committed an offense against S\_\_\_ A\_\_\_ G\_\_\_. The photographs would have been admissible in the Travis County trial to show the probability of the charged act and the unnaturalness of the accused's attitude toward the victim of his lust. *Garcia v. State,* 573 S.W.2d 12 (Tex. Cr.App.1978); *Johnston v. State,* 418 S.W.2d 522 (Tex.Cr.App.1967); *see also Davis v. State,* 645 S.W.2d 288 (Tex.Cr.App. 1983). The photographs also would have been admissible to show that appellant had a common plan, intent, or design. *Stanley v. State,* 606 S.W.2d 918 (Tex.Cr.App.1980); *Hernandez v. State,* 484 S.W.2d 754 (Tex. Cr.App.1972); *see also Andresen v. Maryland,* 427 U.S. 463, 482–484, 96 S.Ct. 2737, 2749–50, 49 L.Ed.2d 627 (1976). We overrule appellant's third ground of error.

Having held that the search warrant was not unconstitutionally overbroad, we must determine whether its issuance was supported by probable cause.

■ When the police seize "mere evidence," probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction. In so doing, consideration of police purposes will be required. *Andresen v. Maryland, supra,* at 483, 96 S.Ct. at 2749; *Warden v. Hayden,* 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967). In this appeal, the record clearly reflects that the police officers who made the arrest and search reasonably could have believed that the photographs of E\_\_\_ M\_\_\_ C\_\_\_ could be used as evidence of the offense against S\_\_\_ A\_\_\_ G\_\_\_.

■ The requirements of probable cause are met when the hearsay information in an affidavit is derived from *named* persons who supplied detailed information suggesting direct knowledge of the information which they have given. *Lopez v. State,* 535 S.W.2d 643, 648 (Tex.Cr.App. 1976); *Frazier v. State,* 480 S.W.2d 375, 380 (Tex.Cr.App.1972). The affidavit, set out in pertinent part below,[1] clearly shows the re-

---

1. Affiant, Sgt. John Russell, is employed by the City of Austin Police Department and currently assigned to the sex crimes unit.

On August 12, 1981, affiant spoke to one Morris Gray, who is an employee of Pounds Photographic Labs., Inc., located at 8627 North IH-35 in Austin, Travis County, Texas. Mr. Gray stated to affiant that Mike Douglas Drousche had over the period of the last several months brought in to Pounds Photographic Labs numerous rolls of photographic film for processing. Mr. Gray told affiant that Mr. Drousche had brought in several rolls of exposed film which, when processed, revealed photographs of nude and partially nude female children. Affiant has personally viewed, on August 12, 1981, photographs in the possession of Mr. Gray which had been brought to Pounds Photographic Labs by the said Mike Douglas Drousche for processing. Said photographs viewed by affiant did depict nude and partially nude female children. Mr. Gray told affiant that said photographs which affiant had viewed were picked up by Mike Douglas Drousche on August 14, 1981.

On August 15, 1981, a sworn statement was taken from S\_\_\_ A\_\_\_ G\_\_\_, which is attached to and incorporated herein, marked as Exhibit # 1, wherein she states that Mike Douglas Drousche engaged in sexual contact with her on August 13, 1981, at Bull Creek in Austin, Travis County, Texas. Said sworn statement was taken by Sgt. Ron McDavid of the Austin Police Department, sex crimes detail, who this affiant knows to be a credible and reliable person.

Sgt. Ron McDavid has told affiant that he had a conversation with the mother of S\_\_\_ A\_\_\_ G\_\_\_, K\_\_\_ G\_\_\_, on August 15, 1981. Sgt. McDavid told affiant the following that K\_\_\_ G\_\_\_ said during that conversation. K\_\_\_ G\_\_\_ said that she spoke with Mike Douglas Drousche on Sunday, August 9, 1981, at her residence ... in Austin, Travis County, Texas. *On that date she was told by Mike Douglas*

liability of the information related and the credibility of the officer's sources. All of the officer's informers are named, their positions are described with particularity, and the events which they related to the officer are outlined in some detail. *Andresen v. Maryland, supra* 427 U.S. at 478, 96 S.Ct. at 2747.

Applying the above-stated principles, we have concluded that the affidavit to this warrant presents sufficient probable cause to support the search. Accordingly, we overrule ground of error number four.

In ground of error one, appellant complains of the trial court's refusal to grant a mistrial after a juror admitted, during trial, that he knew the victim's father.

During the voir dire examination of the jury panel by the prosecuting attorney, the record shows the following inquiry to have been made:

> I would like to run briefly over the people that are involved in this case, to see if anyone knows them.
>
> The victim in this case, her name is E___ M___ C___, and she lives with her mother and dad. D___ C___ is her

father, and I think he works at IBM. And her mother's name is J___ C___, and they live in the Forest North Subdivision which basically is between Round Rock and Cedar Park.

> MR. LOPER [a prospective juror]: I live in Cedar Park, Forest North, but the name doesn't sound familiar.
>
> MR. ANDERSON [the district attorney]: Does anyone else know the [complaining witness' family]?
>
> A Sgt. John Russell at the Austin Police Department will testify. Does anyone know Sgt. Russell?

The record shows, therefore, that the prosecuting attorney stated that he *thought* that D___ C___, the father of the victim, worked at IBM, thereby putting defense counsel on notice of that fact. The record further shows that defense counsel did not ask the jury panel as a whole, or any member thereof, if any juror was employed at IBM; nor did he ask any juror if he, or she, knew D___ C___. From defense counsel's examination of one juror, Ms. Pryor, it appears that he had, in his possession, and available for use, jury information cards.

---

Drousche that he personally processed all of his black and white photographs at his own home, and that he had no place of business away from his home where he could process photographs. He told K___ G___ that he had his color photographs processed by one particular commercial photographic laboratory.

Affiant spoke to Mr. Morris Gray of Pounds Photographic Labs on August 14, 1981. Mr. Gray stated that Mike Douglas Drousche had not brought in any photographic film for processing on August 13, 1981 or since then, and would notify affiant if any film were brought in by Mike Douglas Drousche. Affiant has received no notice by Mr. Gray of any new film being brought in by Mr. Drousche.

Affiant believes that S___ A___ G___ is a credible and reliable person. Affiant has checked the Austin Police Department records and has found no record of arrest or criminal activity by S___. Affiant believes that K___ G___ is a credible and reliable person. Affiant checked the Austin Police Department records and has found no arrests or indication of criminal activity by K___ G___. Affiant spoke to [the] wife of Motorola, Inc., Austin Plant Manager, who stated that K___ G___ is employed as a payroll lead clerk at Motorola.

Sgt. Ron McDavid told affiant that he saw Mike Douglas Drousche on August 14, 1981,

driving a silver 1978 Volkswagen Scirroco automobile bearing 1982 Texas License Plates RNL–395. Sgt. McDavid stated to affiant that he recognized Mike Douglas Drousche by reference to a photograph of said subject which was obtained from the Austin Police Department identification division. Sgt. McDavid told affiant that S___ A___ G___ described Mike Douglas Drousche's car as being a silver-colored small foreign car.

Affiant was told by Mr. Morris Gray at Pounds Photographic Lab that Mike Douglas Drousche had left a phone number of his residence. Said number was 264–1310.

According to Greater Austin Telephone Directory, address of Rudy Kreil is Pedernales Canyon Trail and phone number in telephone directory is same home phone number as that given by Mike Douglas Drousche.

On August 14th, 1981, the said phone number, 264–1310, was called by affiant. Subject answering the phone identified himself as Rudy and confirmed that Mike Douglas Drousche did live there.

On August 15th, 1981, at 6:00 P.M., affiant saw a silver Volkswagen Scirroco bearing Texas License Plate Number RNL–395 parked in a carport west of Pedernales Canyon Road six-tenths of a mile South of U.S. Highway 71 West.

The jury was selected and empanelled. Almost immediately after the State's first witness took the stand, the following occurred.

JUROR RIGHTMYER: I need to speak with you.

THE COURT: You need to speak to me in private?

JUROR RIGHTMYER: With the attorneys and you in private.

THE COURT: We are going to have the jury step out for a moment and I will come talk to you in a moment come to see what you want to talk to me about. [The jury was excused to the jury room, and the following proceedings were had outside the hearing of the jury:]

THE COURT: What is your name, sir?

JUROR RIGHTMYER: Jackson Rightmyer.

THE COURT: Now, he's got to hear what you say. What is the problem, Mr. Rightmyer?

JUROR RIGHTMYER: You asked us yesterday when you were selecting the jury if we knew D___ C___ [the victim's father], and I said no. But I met him one time at work last week, but I will have occasion to work with him in the future because we work on the same products. *I did not make the connection because I've seen his name written down, but I have not pronounced it the same way.* And I met him one time, and *I answered that question wrong, not knowing.*

THE COURT: Let me ask you this: Knowing that gentlemen, would that in any way influence your ability to make a fair and impartial decision in this case?

JUROR RIGHTMYER: I should hope not.

THE COURT: You think it would?

JUROR RIGHTMYER: No.

THE COURT: Do you have any questions?

MR. O'HANLON [appellant's counsel]: You can fairly deliberate on the issues and your knowledge of him—the fact that you're going to work with him in the future will not affect your deliberations in any way? You're the only one that can tell us.

JUROR RIGHTMYER: I don't think so.

THE COURT: Any *objections?*

MR. ANDERSON: No, judge.

THE COURT: We appreciate you telling us. This is very important to us. How do you spell your name?

JUROR RIGHTMYER: R–I–G–H–T–M–Y–E–R.

At this point, appellant moved for a mistrial on the basis that the juror "withheld information, albeit not knowingly." The motion was denied and the trial continued. Though juror Rightmyer stated that he answered "No" to the question propounded by the prosecuting attorney, the record shows that he made no response whatsoever. Appellant conceded, in his motion for mistrial that juror Rightmyer did not *knowingly* withhold any information.

■ We note, initially, that Juror Rightmyer was not disqualified to sit on this panel as a matter of law. *Anderson v. State,* 633 S.W.2d 851 (Tex.Cr.App.1982). We do, however, recognize that there is a serious question whether the trial court erred in not declaring a mistrial based upon the occurrence.

In *Von January v. State,* 576 S.W.2d 43, 45 (Tex.Cr.App.1978), the Court recognized that:

> [w]hen a partial, biased, or prejudiced juror is selected without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him on voir dire not knowing them to be inaccurate, good ground exists for a new trial.

*See also Salazar v. State,* 562 S.W.2d 480, 482 (Tex.Cr.App.1978).

We have concluded that the rule announced in these cases is inapplicable to the present appeal. In *Salazar,* a juror gave false information on voir dire and on juror information cards that he had never before been a witness in a criminal proceeding. In fact, the juror had been an eye-witness to a sexual assault upon his own daughter by a Mexican-American male. More significant-

ly, the appellant in *Salazar* was a Mexican-American on trial for a sexual offense committed against a young girl. Under these circumstances, the Court concluded that a new trial was required.

*Von January v. State, supra,* is similar in some respects to the facts of this appeal. A juror in that case had failed to answer a question posed on voir dire as to whether he knew members of the murder victim's family. Testimony at the motion for new trial later revealed that he not only knew them, but had known them well for more than thirty years. Under these circumstances, the Court held that reversal was required. Similar examples of misconduct may be found in *Norwood v. State,* 123 Tex.Cr.R. 137, 58 S.W.2d 100 (Tex.Cr.App.1933); *Bolt v. State,* 112 Tex.Cr.R. 267, 16 S.W.2d 235 (Tex.Cr.App.1929); and *Adams v. State,* 92 Tex.Cr.R. 264, 243 S.W. 474 (Tex.Cr.App. 1921).

We must contrast these cases with the situation in *Babin v. State,* 149 Tex.Cr.R. 339, 194 S.W.2d 563 (Tex.Cr.App.1946) where a juror stated on voir dire that he "knew him [the deceased] when [he saw] him," but did not state the circumstances from which this familiarity resulted. In affirming the conviction, the Court held that the juror's answer was sufficient to place appellant upon notice of the relationship.

■ The juror information cards in this appeal were not made a part of the record. However, on submission of this case at oral argument, appellant's counsel stated that Juror Rightmyer's card did indicate that he was employed by IBM. Counsel also conceded that he did not realize from these facts that the juror and the victim's father worked at the same place. Finally, he conceded that, as Juror Rightmyer alluded to the court, during the course of the trial, there was some confusion as to the correct pronunciation of the victim's surname. There is no contention in this appeal that Juror Rightmyer's actions were the product of intentional deception; indeed, it is clear that they were simply based upon honest confusion. Given the juror's opinion that

he still would be able to make a fair and impartial decision in the case, we cannot say that reversible error is shown.

In so holding, we are not unmindful of the decision of the Court of Criminal Appeals in *Decker v. State,* No. 67,567, (Tex.Cr.App.) April 20, 1983 (not yet reported). There, during voir dire examination *appellant's counsel* asked if any of the panel members knew the complainant, Oliver. One juror stated that he did. Several questions and answers were exchanged between the appellant's counsel and that juror. No other panel member stated that he knew the complainant. After the jury was selected and sworn, but before the trial on the merits commenced, another juror, L.J. Rich, "recognized" the complainant. A hearing was held and Rich testified that he knew the complainant, that they were welders on the same job, *and had been for several months.* After Rich testified, appellant's counsel, conceding that juror Rich could not be challenged for cause, moved for a mistrial and asked that a new juror be picked, on the grounds that had he known the information revealed by Rich, he would have used a peremptory challenge on the juror. The motion was overruled.

The Court of Criminal Appeals, with Judges Onion and Campbell dissenting, reversed and remanded the cause, holding that appellant was denied his right to peremptorily challenge a juror. In so doing, the Court said:

[a]pparently Rich was not intentionally deceptive in failing to disclose his relationship with the complainant; nevertheless, this relationship was not made known to the appellant's counsel *when he asked a specific question to elicit such information.* Counsel did not have this information when he exercised his peremptory challenge. Similar cases are *Von January v. State,* 576 S.W.2d 43 (Tex.Cr.App.1978) and *Salazar v. State,* 562 S.W.2d 480 (Tex.Cr.App.1978), both of which were reversed because jurors did not divulge important information which could have been used in exercising peremptory challenges. This case is unlike

*Babin v. State* [149 Tex.Cr.R. 339], 194 S.W.2d 563 (Tex.Cr.App.1946), in which the juror stated he knew the deceased when he saw him; this placed counsel on notice that an acquaintanceship existed between the juror and victim; the nature of that relationship counsel could have determined by further investigation of the prospective juror. [emphasis added] *Decker v. State, supra* at page 2 of slip opinion.

*Salazar v. State, supra,* involved *false* information given by a juror. *Von January v. State, supra,* involved *intentional* withholding of vital information. We assume the Court of Criminal Appeals in *Decker v. State, supra,* placed great emphasis on the fact that juror Rich knew the complainant and had worked with him on the same job for several months, and therefore that this fact situation equates *Decker* with *Von January* and *Salazar;* otherwise, *Salazar* and *Von January* do not support the holding in *Decker.*

Be that as it may, the holding in *Decker* is clearly distinguishable from the facts of this case, for the reasons above stated. Here, there was no intentional or deceitful withholding of information by the juror. Counsel for *appellant* asked no questions of him, or the panel, as to whether he knew the victim's father, though he was on notice that both the juror and the father worked at IBM. Having failed to pursue the matter on voir dire, appellant should not now be heard to claim error.

In *Babin v. State, supra,* 194 S.W.2d at 568, on appellant's motion for rehearing, the Court held:

[w]e do not have here a case where the juror, upon his voir dire examination, testified falsely to questions propounded, whereby appellant and his counsel were misled. Nor does the appellant contend that the juror intentionally deceived him. To the contrary, appellant's complaint is that the juror did not volunteer all the information touching his acquaintance and relations with the deceased and that, by reason thereof, his bias and unfairness as a juror were shown.

The answer of the juror that he "knew him (the deceased) when I seen him," was sufficient to place appellant upon notice that there was an acquaintance existing between the prospective juror and the deceased. If appellant desired to know the extent of that acquaintance, he should have inquired of the juror.

Every fact which the appellant ascertained after conviction relative to the acquaintance and relations between the juror and the deceased could have been ascertained by questioning the juror at the time of the voir dire examination. That it was not developed was because appellant did not interrogate the juror relative thereto.

To agree with appellant's contention would be to hold that the mere failure of a prospective juror to volunteer full information as to his prior acquaintance and relations with the deceased in a murder case, stamps such a juror as unfair. This we are unwilling to do. See *Lera v. State,* [144 Tex.Cr.R. 619, 165 S.W.2d 92].

We overrule appellant's ground of error number one.

In appellant's final ground of error, he argues that the court erred in failing to charge the jury on the lesser-included offense of assault by contact. The State denies that, and we have reservations whether, assault by contact is a lesser-included offense of indecency with a child. Appellant cites no cases so stating.

However, we have no occasion to resolve this issue.

■ In determining whether a charge on a lesser-included offense is required, a two-step analysis is to be used. First, the lesser-included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that, if the defendant is guilty, he is not guilty of the alleged offense, but is guilty only of the lesser offense. *Salinas v. State,* 644 S.W.2d 744, 745 (Tex.Cr.App.1983); *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Cr.App.1981).

Without adding to an already lengthy opinion by including a detailed recitation of the facts, and assuming for argument's sake that assault by contact occupies the role of a lesser-included offense in this appeal, we hold that the evidence, which we have examined, does not establish that if appellant is guilty, he is not guilty of indecency with a child, but is guilty only of assault by contact. We overrule appellant's last ground of error.

The trial court's judgment of conviction is affirmed.