James Bernard BECKNELL,
Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 59827.

Court of Criminal Appeals of Texas,
Panel No. 3.

Nov. 19, 1986.

Joseph L. Perkins, Marshall, for appellant.

A.D. Clark, III, Dist. Atty. and William D. Saban, Asst. Dist. Atty., Tyler, Robert Huttash, State's Atty., Austin, for the State.

Before TOM G. DAVIS, McCORMICK and TEAGUE, JJ.

## OPINION

McCORMICK, Judge.

Appellant was convicted of murder and sentenced by a jury to life imprisonment.

Under two grounds of error, appellant argues, first, that the trial court erred in admitting into evidence certain business cards and records of a Houston gun dealer because these items were illegally seized with the ineffective consent of a third party; and last, that the trial judge improperly commented on the weight of the evidence. We disagree with the second ground, find error, if any, in the first ground harmless, and affirm.

On May 12, 1977, Dr. Walter Carl Roddy had posted grades following final examination in his parasitology course in which appellant was enrolled. The record shows that after he conversed with a student, L. Laine, inside his office, he stepped out into the hallway, pivoted back as if to say something more, and was shot six times with a .38 caliber weapon. Laine heard the shots and saw Roddy slump to the floor.

Running out into the hall, she saw appellant headed up the sidewalk outside the building toward his car. A secretary in an office across the hallway, L. Ivy, saw a black male with a goatee walk up to Roddy's doorway and wait to one side of the opening. She looked away, then heard "a loud echoing noise" and turned back around where she heard Roddy "scream and twist out into the hallway." Roddy's assailant backed away from his victim, the man's right arm raised and "sparks flying out in front" of his arm toward the deceased. Ivy then saw the man hurry toward the door to the building and run up the outside steps. Another university professor, Dr. A. Szarka, left his own office after hearing the shots. Upon turning a corner, he came upon a man who he recognized as appellant. Appellant passed by him and hurried out of the building. Szarke testified that he saw the barrel of a gun poking out of appellant's coat. A second secretary, I. Denson, identified appellant as the man running outside the building and stated that she saw a gun barrel "coming out from the back of his rain coat." Appellant does not challenge the sufficiency of the evidence.

In his first ground of error, appellant argues that the Houston gun dealer's business cards and records identifying appellant's purchase of .25 and .38 caliber hand guns and ammunition were inadmissible as the product of an illegal search and seizure of appellant's padlocked bedroom in his parents' house. Specifically, appellant has narrowed his argument on appeal, claiming his father lacked the capacity to consent to the search of appellant's padlocked bedroom.

■ A third party may properly consent to a search when they have equal control over and equal use of the premises being searched. See *Swinney v. State*, 529 S.W.2d 70 (Tex.Cr.App.1975); *Lowery v. State*, 499 S.W.2d 160 (Tex.Cr.App.1973). [following *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969)]. In the context of the instant case, the third party is a home owner and father of appellant who testified that he was allowed to go into appellant's room "[o]nly when he (appellant) was there." Appellant had the only key to the lock for the last two to three years he resided at the house and would cook and eat his meals separately from the rest of his family. Whether out of respect or because of the padlock, appellant's sister also testified that "no one was allowed" in appellant's room.

■ Although there are a number of cases from the Court analyzing the right of a parent to consent to a search of a room exclusively used and controlled by adult progeny, *Sorensen v. State*, 478 S.W.2d 532 (Tex.Cr.App.1972), we may agree that on the narrow facts of the case that the third party here did not exercise equal control over and equal use of the premises being searched. Since appellant's father lacked capacity under these facts to effectively consent, the search of appellant's locked bedroom was improper and seizure of the evidence complained of was tainted so as to be inadmissible. However, the finding of error in the trial court's admission of the items into evidence does not call for automatic reversal, but is instead subject to harmless error analysis. We must still determine whether there is a reasonable possibility that admitting the business cards and records into evidence "might have contributed to the conviction and punishment imposed upon appellant by the jury." *Gant v. State*, 649 S.W.2d 30 (Tex. Cr.App.1983); *Stanley v. State*, 606 S.W.2d 918 (Tex.Cr.App.1980; *Clemons v. State*, 605 S.W.2d 567 (Tex.Cr.App.1980). A judgment will not be reversed for the erroneous admission of evidence that did not injure the defendant. *Prior v. State*, 647 S.W.2d

956 (Tex.Cr.App.1983). If there is overwhelming evidence of guilt, even constitutional error may be harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Norman v. State*, 588 S.W.2d 340 (Tex.Cr.App.1979).

After examining the record, we construe the following factors to be highly material in determining the issue of harmful error in the case:

1. Appellant was positively identified as the individual wearing the raincoat on a day when such apparel would appear odd or suspicious.

2. Appellant was seen walking to and into the building, and walking the halls in the building where the murder took place. He was also seen in the lab where his course grades were posted shortly before Dr. Roddy was shot.

3. The assailant was a man wearing identical or similar clothing matching the description of appellant's appearance as given by several witnesses who knew appellant personally.

4. The assailant walked up to the side of the deceased's office door, waited, and shot the deceased six times with a weapon firing .38 caliber bullets.

5. The assailant, after the shooting, turned and hurried from the building.

6. The assailant passed right by Dr. A. Szarka, went out the exit door and disappeared from view, but not before Szarka identified the man as appellant and saw the barrel of a gun protruding from the hem of the coat appellant was wearing.

7. Appellant was identified as hurrying up the stairs outside the building in the same direction as the fleeing assailant, just seconds after the assailant fled. A gun barrel was sticking out of appellant's coat.

8. Three witnesses testified that appellant had prior disagreements and arguments with Dr. Roddy over course grades. L. Laine, C. Odom and J.K., Payne all testified that they had been in the same room or same area with appellant when the arguments took place. Odom was present on two occasions, May 4 and May 6. She had talked with appellant and found him to be "very unhappy" with his grades because he had a definite impression as to what grade he should receive. On the second occasion, Odom overheard appellant tell Dr. Roddy that missing one particular question was going to "mess up" his entire grade. L. Laine and five or six other students, including appellant, were going over a test with Dr. Roddy on one occasion. She left the room when appellant began arguing about a missed question. J.K. Payne was also in the room at the time and described appellant as "... obstinate; he apparently didn't want to take no for an answer." Payne also testified that on May 11, the day before the murder, appellant and Dr. Roddy were standing in the hallway looking at appellant's lab report and he overheard Dr. Roddy tell appellant that there were too many discrepancies in his report.

9. Even excluding the testimony of gun dealer Shabot, the other State witnesses as well as appellant's own witnesses paint a clear but ugly picture of premeditated murder. Prior to taking classes at the university, appellant had become withdrawn, literally locking out family and friends. He began the parasitology course with the expectation of making above average grades. Failing the first test, he grew unhappy. As successive grades were received, appellant began arguing with his teacher, the record indicating appellant's belief that it was some failure on Dr. Roddy's part and not his own that led to appellant's receiving certain grades. The day before the killing, Dr. Roddy pointed out discrepancies in appellant's final report. The next morning Payne saw and spoke briefly with appellant in the lab where the final course grades were posted. According to Payne, appellant appeared as he always had, quiet and "com-

posed." Payne testified that he could only see one of appellant's hands, the other being hidden beneath the coat appellant was wearing.

10. A short time later, appellant left the lab and walked down the hallway toward Dr. Roddy's office. He passed in front of the open doorway to an office where two secretaries were working. Minutes later Dr. Roddy's assailant was seen waiting outside Roddy's office door. When Roddy walked into the hallway, he was shot six times as he fell to the floor. Appellant was seen leaving the building with the barrel of a gun protruding from his coat. He then fled the scene of his crime, not driving to his home, but to another state.

■ In determining whether there was harmful error in admitting improper evidence as alleged here, the facts and circumstances of the individual case must be considered. *Bird v. State*, 692 S.W.2d 65 (Tex. Cr.App.1985); *Bass v. State*, 622 S.W.2d 101 (Tex.Cr.App.1981); *Ex parte Flores*, 537 S.W.2d 458 (Tex.Cr.App.1976). Here, there was overwhelming evidence of appellant's guilt in the shocking and senseless slaying of a college professor. No less than four different persons saw the assailant, three of whom knew appellant personally. All four witnesses placed appellant at the scene of the murder shortly before, during, and following the shooting.

There is also ample testimony regarding appellant's motive to kill the deceased. Even though the motive of "bad grades" may appear shockingly shallow, it is apparent that appellant blamed Dr. Roddy for his own problems. Appellant's unprovoked conduct is even uglier given the fact that he had received a passing grade on at least part of his work.

Appellant's deliberateness and forethought in the crime is shown by the method and manner of the murder. He wears an overcoat to hide the gun; he walks the halls to hunt his quarry. He then lies in wait beside the deceased's office door, out of view of those inside but not unseen by two women across the hall. When Dr. Roddy emerges from his office, appellant methodically shoots his teacher *six* times, first knocking the deceased down and then continuing to fire into the body until his gun is empty. Appellant's flight into another state, albeit unsuccessful may also evince deliberation of his crime.

■ Taking the record as a whole, excluding the excepted items and testimony, we find the State's case would not have been less persuasive if the business cards and records of the gun dealer had not been admitted into evidence, especially in light of the fact that the murder weapon was never introduced into evidence at trial. The error, if any, was harmless beyond a reasonable doubt. It did not contribute to the conviction. See, *Bird v. State*, supra, at 71; *Jackson v. State*, 548 S.W.2d 685 (Tex.Cr.App.1977); *Bridger v. State*, 503 S.W.2d 801 (Tex.Cr.App.1974); *Holcomb v. State*, 484 S.W.2d 929 (Tex.Cr.App.1972).

■ After a careful review of the record, we also find that appellant was not harmed by the admission of any tainted evidence during the punishment stage of his trial. Although appellant was not shown to have a prior criminal record, see Article 37.07, V.A.C.C.P., the lack or presence of a prior offense is only a single factor in analysis of error. At the punishment hearing, the jury heard no less than seven State witnesses, representing two communities, unequivocally testify that appellant's reputation for being a peaceful and law-abiding citizen was bad. Appellant presented no evidence or testimony of his own character or reputation nor any evidence in mitigation of his cold-blooded premeditated act.

We also find any reference made in final argument to the tainted evidence to be harmless, if error at all. In two recent cases, this Court found that error was not harmless when the prosecutor "highlighted" the error through his final remarks to the jury. *Clemons v. State*, supra; *Jordan v. State*, 576 S.W.2d 825 (Tex.Cr.App. 1978). In both cases, the prosecutor "high-

lighted" the initial error in admission of tainted evidence by specifically calling the juror's attention to the items by name or description. This case is readily distinguishable in that the prosecutor stayed within the bounds of proper argument by merely exhorting the jury to view *all* the evidence in reaching their verdict:

"I want you to look, if you will, at *some of those exhibits* up there. I want you to look and see how Carl Roddy was shot in the back, without warning, with no more thought than that an ordinary person would step on a cockroach, because it might mess up his foot. The *rest of the physical evidence* is over there; the evidence as to what kind of man sits here at this counsel table before you. You are not responsible for his sentence, Ladies and Gentlemen. You are not responsible for what he did, no matter how much they would like to put the burden on you; he is. Thank you." (Emphasis added).

Taken in the context of rebuttal, the prosecutor's remarks did not "highlight" any tainted evidence since the items in issue were never specifically mentioned in argument. See, *Houston v. State*, 652 S.W.2d 389 (Tex.Cr.App.1983). The remarks here are more properly construed as summation of the evidence and a plea for law enforcement, areas of final argument well recognized in Texas law as being within the prerogative of the prosecution. *Darden v. State*, 629 S.W.2d 46 (Tex.Cr.App. 1982); *Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App.1973).

Given the overwhelming evidence of guilt and the manner of the premeditated killing, nothing in the record before us would tend to mitigate against the punishment assessed by the jury. The complained of evidence did not contribute to appellant's conviction and the jury would have reached the same verdict of life imprisonment had not such evidence been admitted. See *Clemons v. State*, supra. Appellant's first ground is overruled.

In his last ground of error, appellant argues that the trial court erred by com-

menting on the weight of the evidence in violation of Article 38.05 of the Texas Code of Criminal Procedure. We disagree. Article 38.05, supra, provides:

"In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case."

■ To constitute reversible error, the trial court's comment to the jury must be such that it is reasonably calculated to benefit the State or to prejudice the rights of the defendant. See, *Sharp v. State*, 707 S.W.2d 611 (Tex.Cr.App.1986); *Davis v. State*, 651 S.W.2d 787 (Tex.Cr.App.1983); *Sharpe v. State*, 648 S.W.2d 705 (Tex.Cr. App.1983); *Marks v. State*, 617 S.W.2d 250 (Tex.Cr.App.1981); *Jenkins v. State*, 488 S.W.2d 130 (Tex.Cr.App.1972); *Minor v. State*, 469 S.W.2d 579 (Tex.Cr.App.1971).

■ The statement at issue came about during a bench conference regarding the admissibility of the Houston gun dealer's business cards and records. At that time, appellant's trial counsel stated:

"Your Honor, *without asking the Jury to remove themselves* at this time, we are going to object to those being introduced into evidence in that the State came into possession of those documents and learned of them through the fruits of an illegal search."

Reserving his ruling on the question of admissibility, the court responded to the State's protestation that the evidence was not tainted by making the following statement appellant claims to be an improper comment:

"I seriously question that they are myself; I just don't think we should jeopardize it now, if we are going to go ahead and tie it in later."

In support of his argument, appellant cites four cases where "comments expressing a fear of reversal were grounds for

reversal." In each of the cases relied upon by appellant, the comments complained of were made by the trial court directly to the jury and concerned the court's admonishment that the jury not separate during recess else a new trial be required. See, *Snow v. State*, 318 S.W.2d 893 (Tex.Cr. App.1958); *Sheffield v. State*, 307 S.W.2d 100 (Tex.Cr.App.1957); *Ables v. State*, 103 Tex.Cr.R. 456, 281 S.W. 858 (1926); *Mahaney v. State*, 95 Tex.Cr.R. 443, 254 S.W. 946 (Tex.Cr.App.1923).

In contrast with appellant's authority, the case at bar presents a different situation. Here, as the record clearly indicates, the Judge's remarks were made outside the jury's hearing at the bench. There is no evidence in the record that the jury heard or understood the court's comments, nor any evidence that appellant was thereby injured. To the contrary, the specific decision of appellant's trial counsel to not request the removal of the jury suggests to us that appellant's own counsel was comfortable that the jury could hear nothing. Given the fact that the trial court's comments were made outside the jury's presence, we hold that the remarks were not reasonably calculated to benefit the State or injure the rights of the defendant, and we cannot see how in fact appellant was harmed. See *Sharp v. State*, supra.

Additionally, since appellant made no objection at the time the comment was made, no error is preserved for review. *Sharp v. State*, supra; *Sharpe v. State*, supra; *Hovila v. State*, 562 S.W.2d 243 (Tex.Cr.App. 1978), cert. denied 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979); *Downey v. State*, 505 S.W.2d 907 (Tex.Cr.App.1974); *Jenkins v. State*, supra; *Minor v. State*, supra. Appellant's last ground of error is overruled.

The judgment of the trial court is affirmed.

TEAGUE, Judge, concurring and dissenting.

Given the facts and circumstances of this circumstantial evidence case, and the law that controls, the majority opinion correctly holds that the police conducted an unlawful search and seizure mission of the adult appellant's room, that was located in his father's residence, which room the appellant had personally made entry-proof.

The facts make it crystal clear that *nobody*, including the appellant's father, who gave the police consent to enter the room, dared enter the appellant's room in his absence. Thus, the trial judge erred by permitting the State to present evidence and testimony that was caused to exist by the unlawful entry which occurred in the appellant's absence. See and cf. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *May v. State*, 582 S.W.2d 848 (Tex.Cr.App.1979); *Swinney v. State*, 529 S.W.2d 70 (Tex.Cr.App.1975); *Lowery v. State*, 499 S.W.2d 160 (Tex.Cr. App.1973); *Sorensen v. State*, 478 S.W.2d 532 (Tex.Cr.App.1972); *Buchanan v. State*, 471 S.W.2d 401 (Tex.Cr.App.1971); *Bray v. State*, 597 S.W.2d 763 (Tex.Cr.App.1980); *Perez v. State*, 514 S.W.2d 748 (Tex.Cr. App.1974); *Tijerina v. State*, 578 S.W.2d 415 (Tex.Cr.App.1979); *Vargas v. State*, 542 S.W.2d 151 (Tex.Cr.App.1976); *In re Scott K.*, 24 Cal.3d 395, 155 Cal.Rptr. 671, 595 P.2d 105 (1979); *People v. Nunn*, 55 Ill.2d 344, 304 N.E.2d 81 (Ill.Sup.Ct.1973).

I part company with the majority opinion because of its holding that the error is harmless as to the maximum possible punishment that was assessed the appellant by the jury.

The test for harmless error is whether there is a reasonable possibility that the error might have contributed to the maximum possible punishment that the jury assessed the appellant. See Matthew-Bender, 4 *Texas Criminal Practice Guide*, Sec. 90.06(2)(e); Ringel, 1 *Searches and Sei-*

*zures, Arrests and Confessions,* Sec. 20.-7(c). In this instance, it must be determined whether the State's case on punishment might have been considerably weakened without *all* of the tainted evidence.

After having carefully read the record, it is obvious to me that there should be no doubt in any rational person's mind that from the time of the voir dire examination of the jury by the prosecuting attorney, during which he referred to "how long the crime had been planned," until he closed with the argument that is set out on page 7 of the majority's slip opinion, he not only planted the seed of premeditation in the minds of the jurors, he did everything within his power to nourish the seed into a full blossoming plant of prejudice toward the appellant.

The deceased was shot with a .38 calibre weapon.

The seed for the prosecuting attorney's plant came from 450 spent .38 calibre cartridges that the police seized from the room of the appellant, which led them to McBride, a Tyler gun shop dealer, who testified that only two days before the killing the appellant purchased the precise type of bullets found at the murder scene. McBride also testified that the appellant had attempted to purchase a shotgun when he was in the store. Two business cards of Sam Shabot, a pawnshop owner located in Houston, were also seized from the room. This enabled the police to contact Shabot from whom they learned that in October, 1976, the appellant had recently purchased from him a .38 calibre revolver and a .25 calibre pistol. The killing occurred in May, 1977.

Notwithstanding all of the above, the majority opinion states with a certain air of over confidence that "the jury would have reached the same verdict of life imprisonment." The majority opinion appears to leave the hindsight impression that the above tainted evidence and testimony has now been antiseptically cleansed before it went before the jury. Perhaps in the hands of a neophyte prosecuting attorney such would be true. However, after having read the record, I can assure all that appellant was no match for Clark, who was undoubtedly a very competent and effective prosecuting attorney. It is clear that Clark obtained the maximum possible use of the tainted evidence and testimony.

It is true that in making the determination whether the error was harmless as to the punishment assessed this Court often looks to the jury argument of the prosecuting attorney, see, for example, *Clemons v. State,* 605 S.W.2d 567, 571 (Tex.Cr.App. 1980); *Jordan v. State,* 576 S.W.2d 825, 830 (Tex.Cr.App.1978). In this instance, Clark's comment of "what kind of man sits at this Counsel table before you" was given meaning when one takes into consideration the fact that the jury had before it the tainted evidence and testimony.

To conclude as the majority opinion does, that there was not a reasonable possibility that the above tainted evidence and testimony had no affect upon the decision of the jury to assess the maximum possible punishment is, to me at least, truly mind boggling.

The error was not harmless beyond a reasonable doubt on the maximum possible punishment that the jury assessed. To the contrary holding by the majority opinion, I respectfully dissent.