02-10-082-CR.PDR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00082-CR

 

 


 
 
 Steven Keith Green
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 432nd
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM OPINION[1]

ON
APPELLANT’S PETITION FOR DISCRETIONARY REVIEW

----------

After
reviewing Appellant Steven Keith Green’s petition for discretionary review, we
modify our opinion and judgment in this appeal.  See Tex. R. App. P.
50.  We withdraw our April 14, 2011 opinion and judgment and substitute the
following.

I.  Introduction

Appellant
Steven Keith Green appeals his conviction for three counts of aggravated sexual
assault of a child younger than seventeen years of age.  In two issues, Green argues
that the trial court erred by denying his motion to suppress and by excluding
certain evidence of the complainant’s past sexual behavior.  We will affirm.

II.  Factual and Procedural Background

H.G.
is Green’s biological daughter.  H.G. lived with her mother until she was
eleven years old, when she moved in with Green and his wife Melissa. When H.G.
was thirteen, she went on a trip to California with Green.  Green and H.G.
shared a bed in their hotel room, and one night, Green performed oral sex on H.G. 
Green also had H.G. perform oral sex on him during the trip.

The
two continued performing oral sex on each other after they returned to Texas.  At
some point that year, while H.G. was still thirteen, Green began having sexual
intercourse with her.  Green and H.G. had sex in her room twice a week, and he
always ejaculated into a towel.  Melissa began noticing unusual behavior
between Green and H.G.—H.G. always got in bed with Green when Melissa got up,
they “spoon[ed]” on the couch, and Melissa twice saw H.G. lying on the couch
with her face in Green’s lap turned to his crotch.  Green and H.G. texted each
other frequently when they were in the same room with Melissa.  Melissa moved
out of the master bedroom and stayed in a different bedroom for about two
months; during that time, H.G. and Green shared the same bed “every night.”  Melissa
thought the behavior was strange and even asked Green if he was having a sexual
relationship with H.G.  Green responded that the accusation was disgusting
because H.G. was his daughter.  Melissa ultimately moved out when H.G. was
fifteen or sixteen.    

After
Green and Melissa separated, Green and H.G. continued living together alone.  When
H.G. was sixteen, she and Green moved into a two-bedroom apartment in Crowley,
where they continued to have sexual relations.  Green worked out of town, and H.G.,
who had dropped out of school, lived there alone during the week.  The two
shared a bedroom in the apartment when Green returned on weekends, and they had
sex each weekend. 

H.G.’s
brother Daniel, who also stayed at the apartment from time to time, testified
that he always slept on the couch and that H.G. and Green slept in the same bed
together upstairs.  Daniel testified that the living arrangements were “weird”
but that he “just didn’t want to think about it.”

H.G.
eventually told her maternal uncle about her and Green’s sexual relationship.  H.G.,
her uncle, her mother, and her stepfather went to the police station to report
Green to the authorities.  Officer Kevin Newman of the Crowley Police
Department later escorted H.G. to the apartment she shared with Green to get her
things.  While they were there, H.G. showed Officer Newman the bed she and
Green shared; she pointed out two towels on the floor beside the bed and
informed the officer that Green had ejaculated onto the towels the last time
they had sex.  Officer Newman took a sheet from the bed and the two towels for
DNA testing.

DNA
samples taken from the same quarter-inch section of one of the towels matched H.G.’s
epithelial cells and Green’s sperm cells.  DNA samples from the other towel and
from the sheet also matched Green’s sperm cells and contained a minor component
of epithelial cells compatible with H.G.’s DNA.

A
jury found Green guilty of all three counts of sexual assault of a child, and
after a punishment hearing where the jury heard evidence of Green’s prior
felony conviction for burglary of a vehicle, the jury assessed Green’s
punishment at seventy-five years’ imprisonment for each count.  The trial court
sentenced Green accordingly, ordering that the sentences be served
consecutively.

III.  Motion to Suppress

In
his first issue, Green argues that the trial court abused its discretion by
denying his motion to suppress the towels and bed sheet seized by Officer
Newman when he escorted H.G. to the apartment that she and Green shared.  Green
argues that H.G., as a minor, lacked the capacity to consent to the search of the
bedroom.[2]


A. 
Standard of Review and Law on Consent Searches

The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend. IV; Wiede v. State, 214 S.W.3d
17, 24 (Tex. Crim. App. 2007).  A warrantless police entry into a person’s home
is presumptively unreasonable unless it falls within the scope of one of a few
well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218,
219, 93 S. Ct. 2041, 2043–44 (1973); Johnson v. State, 226 S.W.3d 439,
443 (Tex. Crim. App. 2007).  One such exception is a consensual entry.  Schneckloth,
412 U.S. at 219, 93 S. Ct. at 2043–44 (1973); Johnson, 226 S.W.3d at 443.
 

Consent
to enter and search property can be given either by the individual whose
property is searched or by a third party who possesses common authority over
the premises.  Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S. Ct. 2793,
2797 (1990); Patrick v. State, 906 S.W.2d 481, 490 (Tex. Crim. App. 1995),
cert. denied, 517 U.S. 1106 (1996).  The third party may, in her own
right, give valid consent when she and the absent, non-consenting person share
common authority over the premises or property.  Hubert v. State, 312
S.W.3d 554, 560 (Tex. Crim. App. 2010); see United States v. Matlock,
415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974); Becknell v. State, 720
S.W.2d 526, 528 (Tex. Crim. App. [Panel Op.] 1986), cert. denied, 481
U.S. 1065 (1987).  Common authority derives from the mutual use of the
property, not the ownership or lack thereof.  Limon v. State, 340 S.W.3d
753, 756 (Tex. Crim. App. 2011); Matlock, 415 U.S. at 171, 94 S. Ct.
988, Maxwell v. State, 73 S.W.3d 278, 282 (Tex. Crim. App.), cert.
denied, 537 U.S. 1051 (2002).  The validity of an alleged consent to search
is a question to be determined from all the circumstances.  Maxwell, 73
S.W.3d at 282.

We
review a trial court’s ruling on a motion to suppress evidence under a bifurcated
standard of review.  Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim.
App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
We give almost total deference to a trial court’s rulings on questions of
historical fact and application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor, but we review de novo
application-of-law-to-fact questions that do not turn on credibility and
demeanor.  Amador, 221 S.W.3d at 673; Estrada v. State, 154
S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson v. State, 68 S.W.3d 644,
652–53 (Tex. Crim. App. 2002).  Determinations of actual and apparent authority
are reviewed de novo as mixed questions of law and fact.  Limon, 340
S.W.3d at 757.  When a trial court does not enter findings of fact, as here, a
reviewing court must view the evidence in a light most favorable to the trial
court’s rulings and assume that the trial court resolved any issues of
historical fact or credibility consistently with its ultimate ruling.  See
id.

B.  Authority
to Consent 

Here,
Green testified at the suppression hearing that he and H.G. lived in the
apartment together, that H.G. had a key, and that she was listed on the lease
as an occupant.  The apartment had two bedrooms, one of which had a king-sized
bed in it and the other had a baby bed in it.[3]  The room with the
king-sized bed, which was the room from which Officer Newman took the towels
and sheet, was both H.G.’s and Green’s bedroom; according to Green, it was H.G.’s
room when Green was out of town during the week, and it was his room when he
was at home on the weekends.  Thus, based on the record from the suppression
hearing, the trial court could have found that H.G. had authority to consent to
the removal of these items from the bedroom because, at a minimum, she shared
common authority over the bedroom.  See Hubert, 312 S.W.3d at 560; see
also Matlock, 415 U.S. at 171, 94 S. Ct. at 993; Becknell, 720
S.W.2d at 528.  

Thus,
the question becomes whether the fact that H.G. was a minor prevented her from
being able to consent to the removal of items from the bedroom that she shared
with her father.  The court of criminal appeals recently rejected a per se rule
that children may, or may not, consent to entry into a residence.  Limon,
340 S.W.3d at 756.  The court explained, “Under given circumstances, and
taking into account ‘widely shared social expectations’ and ‘commonly held
understanding,’ it may be reasonable or unreasonable to believe that a child
has authority to consent to a particular intrusion.”  Id.  at 257.

Here,
sixteen-year-old H.G. had been living in the apartment by herself five days out
of the week, with no adult supervision; she had been driving herself to her job
at a fast-food restaurant; and she had a five-month-old baby.  See Russell
v. State, 739 S.W.2d 923, 927 (Tex. App.—Dallas 1987, pet. dism’d) (holding
sixteen-year-old defendant freely and voluntarily consented to search of her
residence when she said, and acted like, she was eighteen years old); see
also Limon, 340 S.W.3d at 758 (considering fact that minor “appeared to be
at least a teenager of significant maturity, if not a young adult,” in holding
that he possessed apparent authority to consent to the entry into another’s
home).  Moreover, Officer Newman was not there to search the apartment
for evidence of a crime; he had accompanied H.G. there so that she could move
her things out of the house, and while there, she directed him to the sheet and
towels.  Viewing the totality of the circumstances surrounding H.G.’s consent,
we hold that the fact that she was a minor did not prevent her from freely and
voluntarily consenting to Officer Newman seizing the towels and bed sheet that
she directed him to in the bedroom that she shared with her father.  See
Maxwell, 73 S.W.3d at 281.  Consequently, we hold that the trial court did
not err by denying Green’s motion to suppress, and we overrule Green’s first
issue.

IV.  Rule 412 Evidence

In
his second issue, Green argues that the trial court violated his confrontation
rights under the Sixth Amendment to the United States Constitution by excluding
evidence of H.G.’s past sexual behavior.  Green argues that the evidence was
admissible under Texas Rule of Evidence 412 (the “rape shield law”) to show
that H.G. had a bias against him and a motive to falsely accuse him of sexual
assault.  The State contends that the evidence was not admissible under rule
412 and that, alternatively, any error in excluding the evidence was harmless. 
 

A.  Standard
of Review

We
review a trial court’s decision to admit or to exclude evidence under an abuse
of discretion standard.  Weatherred v. State, 15 S.W.3d 540, 542 (Tex.
Crim. App. 2000); see also Lagrone v. State, 942 S.W.2d 602, 613
(Tex. Crim. App.) (explaining that a trial court “maintains broad discretion to
impose reasonable limits on cross-examination to avoid, inter alia, harassment,
prejudice, confusion of the issues, endangering the witness, and the injection
of cumulative or collateral evidence”), cert. denied, 522 U.S. 917
(1997).   A trial court does not abuse its discretion as long as the decision
to admit or to exclude the evidence is within the zone of reasonable
disagreement.  Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990) (op. on reh’g).

B.  Confrontation
Rights and Rule 412

The
Confrontation Clause of the Sixth Amendment to the United States Constitution
provides that, “[i]n all criminal prosecutions, the accused shall enjoy the
right . . . to be confronted with the witnesses against him.” U.S. Const.
amend. VI; Davis v. Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110
(1974).  The Sixth Amendment right of confrontation is a fundamental right and
is applicable to the states by virtue of the Fourteenth Amendment.  Pointer
v. State, 380 U.S. 400, 403, 85 S. Ct. 1065, 1067–68 (1965); Shelby v.
State, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991).  The right to confront
and to cross-examine is not absolute and may, in appropriate cases, bow to
accommodate other legitimate interests in the criminal trial process.  Allen
v. State, 700 S.W.2d 924, 929, 931 (Tex. Crim. App. 1985) (holding that
precursor to rule 412 was constitutional and did not, on its face, violate
accused’s right to confrontation); see also Chambers v. Mississippi, 410
U.S. 284, 295, 93 S. Ct. 1038, 1046 (1973).  Moreover, the Constitution
requires only the introduction of otherwise relevant and admissible evidence. See
United States v. Nixon, 418 U.S. 683, 711, 94 S. Ct. 3090, 3109 (1974).

Texas
Rule of Evidence 412, known as the rape shield law, governs the admissibility
of a complainant’s prior sexual relationships with third parties in a sexual
assault case.  See Tex. R. Evid. 412.  Rule 412(b) provides that
specific instances of a victim’s past sexual conduct are inadmissible unless
(1) the evidence falls within one of five categories of evidence listed in rule
412(b)(2), and (2) the trial court finds that the probative value outweighs the
danger of unfair prejudice.  See Tex. R. Evid. 412(b).  Even if the
evidence falls within the enumerated categories of rule 412(b)(2), the court
must further find that the probative value of the evidence outweighs the danger
of unfair prejudice.  See Holloway v. State, 751 S.W.2d 866, 869–70
(Tex. Crim. App. 1988); Stephens v. State, 978 S.W.2d 728, 732 (Tex.
App.—Austin 1998, pet. ref’d).  

Rule
412 attempts to limit abusive, embarrassing, and irrelevant inquiries into a
complainant’s private life and to encourage victims of sexual assault to report
those crimes.  See Allen, 700 S.W.2d at 929; Wofford v. State,
903 S.W.2d 796, 798 (Tex. App.—Dallas 1995, pet. ref’d).  The court of criminal
appeals has expressed the rationale of provisions such as rule 412 by stating
that

evidence of a rape
victim’s prior sexual activity is of dubious probative value and relevance and
is highly embarrassing and prejudicial. Often such evidence has been used to
harass the prosecuting victim. Sponsors of these statutes assert that they
encourage victims of sexual assault to report the crimes without fear of having
their past sexual history exposed to the public.

 

Allen,
700 S.W.2d at 929 (quoting Bell v. Harrison, 670 F.2d 656, 658 (6th Cir.
1982)).

C.  Rule
412 Hearing

At
trial, defense counsel attempted to offer evidence that H.G. made the sexual
assault allegations against Green in retaliation for his bringing sexual
assault charges against Donald Fincher, the father of her baby.  The trial
court permitted defense counsel to make an offer of proof in a rule 412 hearing. 
 

During
the hearing, H.G. testified that when she was fifteen, she and Fincher, who was
twenty-eight or twenty-nine at the time, had a sexual, “voluntary relationship”
for a few weeks.  They had sex more than one time on a single occasion, and
H.G. got pregnant.[4]  In March 2007, H.G. told
Green that she was pregnant with Fincher’s child, and Green forced her to go to
the police department to file charges against Fincher.  H.G. testified that she
did not want to file charges, but she denied ever threatening Green that she
would put him in jail if she found out that he had anything to do with Fincher’s
prosecution.  H.G. ultimately went to the police station with Green, wrote a
statement explaining what had happened between her and Fincher, and submitted to
a DNA test.  In November 2007, Green and H.G. learned that Fincher had accepted
a ten-year sentence for what he had done to H.G.  That same month, H.G. told
her uncle about her sexual relationship with her father.  

Green
also testified that H.G. had not wanted to file charges against Fincher but
that Green had told H.G. that her baby could be taken away if she “did not do
what was right.”  According to Green, in March 2007, when H.G. told him that
she was pregnant, she threatened Green that “if she found out that [he] pressed
charges [on Fincher], she would have [Green] put in jail as well.”  Green said
that H.G. only made that one threat.  Around Thanksgiving 2007, approximately five
months after the baby was born and nine months after H.G. had allegedly threatened
Green, Green and H.G. learned of Fincher’s plea bargain.  Green testified that
he “didn’t notice a reaction” in H.G. when they heard the news.    

H.G.’s
uncle testified that H.G. had denied that Fincher was her boyfriend and had
instead told her uncle that she wanted to prosecute Fincher because he had
raped her.    

At
the end of the rule 412 hearing, defense counsel argued that the evidence was
admissible “to show bias or prejudice on the part of the victim in this case,
that she made at least one threat that she would see [Green] put in jail over
the Donald Fincher allegations and prosecution, and therefore, this is the
linchpin to our defense.”  The trial court ultimately sustained the State’s
objection to the introduction of any evidence that H.G. had sexual relations
and a baby with Fincher.  The court stated, “If you want to put your client on in
front of [the] jury, I’ll let you do it, and I’ll let you ask him . . . if
[H.G.] ever threatened him.  But you won’t go into the underlying – any
underlying sex on the part of this witness.  That’s a violation of the statute,
the Texas law.”   

D. 
Harmless Error

We
will assume that the trial court abused its discretion by prohibiting Green
from introducing the proffered testimony to support his defensive theory and
that the proffered evidence formed such a vital portion of Green’s case that its
exclusion effectively precluded him from presenting a defense; consequently, we
will conduct a harmless error analysis under rule 44.2(a).  See Tex. R. App.
P. 44.2(a); Rubio v. State, 241 S.W.3d 1, 3 (Tex. Crim. App. 2007); Potier
v. State, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002) (“[T]he exclusion of a
defendant’s evidence will be constitutional error only if the evidence forms
such a vital portion of the case that exclusion effectively precludes the
defendant from presenting a defense.”). 

Under
rule 44.2(a), we must reverse unless we determine beyond a reasonable doubt
that the error did not contribute to Green=s
conviction or punishment.  Tex. R. App. P. 44.2(a).  The question is whether
the trial court=s failure to allow Green to
introduce evidence of H.G.’s past sexual behavior to show her bias or motive to
lie was harmless beyond a reasonable doubt.  See Williams v. State,
958 S.W.2d 186, 194 (Tex. Crim. App. 1997).  In applying the Aharmless
error@
test, our primary question is whether there is a Areasonable
possibility@ that the error might have contributed
to the conviction.  Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998), cert. denied, 526 U.S. 1070 (1999).

Our
harmless error analysis should not focus on the propriety of the outcome of the
trial; instead, we should calculate as much as possible the probable impact on
the jury in light of the existence of other evidence.  Wesbrook v. State,
29 S.W.3d 103, 119 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944
(2001).  We consider the source and nature of the error, the extent that it was
emphasized by the State, its probable collateral implications, the weight a
juror would probably place on the error, and whether declaring it harmless
would be likely to encourage the State to repeat it with impunity.  Harris
v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).  This requires us to
evaluate the entire record in a neutral, impartial, and even-handed manner, not
“‘in the light most favorable to the prosecution.’”  Id. at 586 (quoting
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).

After
a careful and neutral review of the record, we conclude beyond a reasonable
doubt that the exclusion of this testimony did not contribute to Green=s
conviction or punishment.  See Tex. R. App. P. 44.2(a).  This is not
just a case of “he said, she said.”  Cf. Billodeau v. State, 277
S.W.3d 34, 42 (Tex. Crim. App. 2009) (“In many sexual-assault cases, the only
evidence linking the accused to the offense is the complainant’s accusations.”);
Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002) (recognizing
that in prosecutions for sexual offenses, a successful conviction “‘often
depend[s] primarily on whether the jury believe[s] the complainant, turning the
trial into a swearing match between the complainant and defendant’” (citation
omitted)); Kelly v. State, 321 S.W.3d 583, 594 (Tex. App.—Houston [14th
Dist.] 2010, no pet.) (noting, in holding that exclusion of evidence was
harmful under rule 44.2(a), that “the believability of the children’s testimony
is at the heart of this case”).  Rather, the State presented scientific
evidence showing that H.G.’s epithelial cells and Green’s sperm cells were
found on two towels next to the bed that they shared and on a sheet taken from
their bed.  Green’s ex-wife and H.G.’s brother both testified to suspicious
behavior between Green and H.G., including that they shared a bedroom and
spooned on the couch together with H.G.’s face in Green’s crotch.  Thus, while
H.G.’s testimony that her father had sexually abused her was no doubt important
to the State’s case, the State also relied on other testimony and scientific
evidence to establish that Green had sexually assaulted H.G.[5] 
Cf. Stephenson v. State, 226 S.W.3d 622, 628 (Tex. App.—Amarillo 2007,
no pet.) (holding that when State presented no evidence tying defendant to
crime other than complainant’s identification of defendant as perpetrator,
wrongful exclusion of defense expert testimony pertaining to reliability of
eyewitness identification of suspect was harmful); Fox v. State, 115
S.W.3d 550, 564 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d) (holding as
harmful under rule 44.2(b) the exclusion of evidence that supported defense’s
theory under doctrine of chances when State’s case boiled down to complainant’s
allegation of sexual abuse, inconclusive physical evidence, and weak
circumstantial evidence); see also Reed v. State, No. 02-02-0055-CR, 2003
WL 1894581, at *7 (Tex. App.—Fort Worth Apr. 17, 2003, pet. ref’d) (op. on reh’g)
(not designated for publication) (“The story told by the physical evidence in
this case is simply so strong that we cannot conclude the jury would have been
influenced by . . . testimony concerning the statement Samantha made in the
emergency room.”).

Moreover,
Green testified at the rule 412 hearing that H.G. had threatened to “put him in
jail” if he reported Fincher to the police.  While Green’s testimony shows that
H.G. had threatened to tell the police about their relationship, it does not
establish that she threatened to falsely accuse him of sexual assault.[6] 
And the evidence shows that she made this threat a single time, months before
she actually made her outcry, and that at no point during the police
investigation in Fincher’s prosecution did she ever tell the police about her
relationship with Green. 

We
recognize that the jury is the ultimate factfinder on such issues as the
credibility of the witnesses and the weight to be given to their testimony.  See
Billodeau, 277 S.W.3d at 43.  But in light of the strong scientific and
circumstantial evidence of Green’s guilt and the tenuous implication that a
single threat to put Green in jail—made months before H.G. made her outcry—was
a threat to falsely accuse him, we cannot conclude that the jury would have
been influenced by the excluded testimony.  See Wesbrook, 29
S.W.3d at 119.  After carefully reviewing the record and performing the
required harm analysis under rule 44.2(a), we hold beyond a reasonable doubt
that the trial court=s alleged error did not
contribute to Green’s conviction or punishment.  See Tex. R. App. P.
44.2(a). 

V.  Conclusion

Having
overruled Green’s two issues, we affirm the trial court’s judgment.

 

SUE WALKER
JUSTICE

 

PANEL: 
DAUPHINOT, WALKER, and MCCOY, JJ.

 

MCCOY,
J. filed a concurring opinion for which DAUPHINOT, J. joins.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 4, 2011

 


 
 
 
 
 
 


 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00082-CR

 

 


 
 
 STEVEN KEITH GREEN
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 432ND DISTRICT Court OF Tarrant
COUNTY

----------

 

CONCURRING
MEMORANDUM OPINION[7]

----------

 

I
concur in the result reached by the majority, but I would hold there was error,
in the suppression of evidence concerning H.G.’s sexual relationship with
Donald Fincher.  There is an important distinction between an attack on the
general credibility of a witness and a more particular attack on credibility
that reveals “‘possible biases, prejudices, or ulterior motives of the witness
as they may relate directly to issues or personalities in the case at hand.’”  Hammer
v. State, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009) (quoting Davis v.
Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974)).  Evidence of a
victim’s prior sexual activity may be admissible under rule 412 when offered to
establish the victim’s motive or bias against the defendant.  Id. at
566.   

In
the rule 412 hearing, Green argued that H.G. was angry at him when he forced
her to press charges against Fincher, the father of her child.  The unsealed
court records confirmed Fincher’s paternity and H.G.’s complaint against Green coincided
with Fincher’s sentencing.  Green testified that H.G. threatened him that if he
forced her to press charges against Fincher, she would have him (Green) put in
jail as well.  H.G. testified that she had a “voluntary relationship” with
Fincher, that she did not want to file charges against him, and that Green had
forced her to do so.  She also denied threatening Green.  H.G.’s uncle
testified that H.G. told him that she wanted to prosecute Fincher because he
had raped her, which directly contradicted H.G.’s testimony about the nature of
her relationship with Fincher.  Taken together, the testimonial discrepancies raise
a fact question about possible motive or bias behind H.G.’s complaints against
Green.  Therefore, because H.G.’s testimony was relevant for the jury to
determine motive or bias, and although it was harmless error, the trial court
erred by excluding it. 

 

BOB MCCOY
JUSTICE

 

DAUPHINOT,
J. joins.

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: 
August 4, 2011

 









[1]See Tex. R. App. P. 47.4.





[2]Green also argues on
appeal that H.G lacked capacity to consent to a search because she was no
longer living at the apartment and that the search was unreasonable because
Officer Newman did not attempt to contact him before the search.  But Green did
not present these arguments in his motion to suppress or at the suppression
hearing.  Consequently, he failed to preserve these arguments for appeal.  See
Tex. R. App. P. 33.1; Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim.
App. 2002) (holding issue not preserved when objection at trial does not
comport with issues raised on appeal); Martinez v. State, 17 S.W.3d 677,
682 (Tex. Crim. App. 2000) (holding argument based on lack of authority to
consent to search was not preserved when only argument at trial was
voluntariness of consent).





[3]H.G. had a baby with
another man.  We will address the exclusion of this evidence in Part IV of this
opinion.





[4]DNA testing revealed that
Fincher was the father of H.G.’s baby.





[5]The State emphasized the
other evidence of guilt during closing argument:

But did the State bring you more [than H.G.’s
testimony]?  Yes.  The State brought you much more.  The State brought you her
brother, Daniel, who said when he spent the night, [H.G. and Green] went
upstairs and spent the night together in the one bed in the house and came down
together.  That’s strong evidence that a biological father is sleeping with his
biological daughter.

Was there more?  Yes.  We brought you more.  We brought
you the ex-wife, Missy.  And what did she tell you?  She constantly saw the two
of them in bed together.  She saw the two of them snuggling together on the
couch in an [in]appropriate way.  She said for the last month or two they were
married, she was off in a totally different bedroom and [Green] and [H.G.] are
sharing a bedroom every single night . . . .

We have the two officers that investigated the case and
filed the case and gathered the evidence.  But is there even more?  Yes.  There
is DNA.  And [Green] cannot escape his DNA.  That is the ultimate damning proof
for this defendant.





[6]As the State points out,
H.G. could have threatened to put Green in jail if he pressed charges on Fincher
because, according to her own testimony, she thought that her relationship with
Fincher was “voluntary” and that “it wasn’t right” to prosecute him for their
consensual relationship.  And at trial, H.G. testified that Green had once told
her that if she ever told anyone about their relationship, he “would go to jail
for a long time.”





[7]See Tex. R. App. P.
47.4.